## MARGARET G. LORD v. NEW YORK LIFE INSURANCE COMPANY ET AL.

### Decided November 8, 1901.

**1.—Life Insurance—Gift of Policy—Evidence.**

A chose in action, such as a life insurance policy, may be the subject of gift, and delivery of the policy as a gift may be proved by circumstantial evidence.

**2.—Same—Fact Case.**

Evidence showing that a brother, who stood in loco parentis to his sister, made declarations, both before and after his marriage, that he had provided for her, in case of his death, by insurance, and that a certain policy payable to his estate was for her, and at one time delivered a package of papers to a third party to be cared for, saying that in it was a policy for his sister, of which package he subsequently took possession, and after his death the policy was in the custody of his bankers, this was sufficient to support a finding that he had made a gift of the policy to the sister. Pleasants, Associate Justice, dissenting.

**3.—Evidence—Practice on Appeal.**

The erroneous admission of hearsay evidence to show a fact otherwise clearly established, is not reversible error.

**4.—Same—Varying Written Instrument.**

The declarations of the insured that a life insurance policy payable to his estate belonged to his sister were not inadmissible as tending to vary the terms of a written instrument, since the policy was a subject of gift.

**5.—Same—Declarations Against Interest.**

Where the insured stood in loco parentis to his sister, his declarations as to having given her a policy payable to his estate were not inconsistent with his possession of the policy, and were admissible as against interest.

**6.—Same—Statute of Frauds—Gift of Goods—Possession.**

The statutory provision requiring possession to accompany a gift of goods or chattels does not apply to choses in action, and hence, where the plaintiff claimed the proceeds of a life insurance policy by parol gift, it was not error to refuse a charge that, in order to establish the gift, the possession of the policy must have remained with the donee. Rev. Stats., art. 2546.

Appeal from Galveston. Tried below before Hon. William H. Stewart.

*Mart H. Royston* and *Kleberg & Neethe,* for appellant.

*Pruitt & Smith, R. W. Flournoy, William B. Lockhart,* and *Harris & Harris,* for appellees.

Affirmed by the Supreme Court upon certificate of dissent.

GARRETT, CHIEF JUSTICE.—The controversy in this case is about the ownership of the proceeds of a policy of insurance for $10,000 upon the life of Richard Lord, deceased, issued by the New York Life Insurance Company. Upon its face the policy is payable to the executors, administrators, or assigns of the insured. Richard Lord died September 8, 1900, leaving a will in which he devised all his property of whatever character to his wife, Margaret G. Lord. Kate Lord, a sister of the deceased, claimed the policy of insurance as a gift from her brother and brought this suit against the insurance company and Margaret G. Lord to require the proceeds to be paid to her. The insurance company admits liability upon the policy for the sum of $14,428, and offers to pay the money to whichever of the parties the court shall adjudge is entitled to it. A trial by jury in the court below resulted in a judgment in favor of the plaintiff, Kate Lord, against the insurance company for the amount above stated. From that judgment Margaret G. Lord has appealed.

Richard Lord and the defendant, Margaret G. Lord, were married June 29, 1899. He was about 43 years of age at the time of his marriage and his sister, the plaintiff, was then about 27 years of age. When Kate Lord was about 12 or 13 years old her mother died. Not long after the death of the mother their father went to South America, where he died within a short time. After the death of her mother, and until his death, Kate Lord was supported entirely by her brother, Richard Lord. She had no property except an interest in some shares of mining stock inherited from her father, and it yielded no income. The relations between the brother and sister were of the most affectionate nature, and he provided liberally for her support and education. After she left school she lived with him until his marriage and until his death had permission to draw against his bank account. At his death Richard Lord left but little property except some policies of life insurance. These policies were all contained in a box which was locked and left by him in the custody of Adoue & Lobit, bankers in Galveston, in whose possession it was at the time of his death. Among the policies were two payable to the wife amounting to $20,000; an acident policy for $5000 payable in case of death to Kate Lord; and three policies payable to the estate of the deceased, one of which was the one in controversy. All of them were issued after the marriage of Richard Lord and the defendant Margaret G. Lord, except the one claimed in this suit by the plaintiff, Kate Lord. It bears date October 31, 1894, and was the only insurance Lord ever had upon his life prior to his marriage.

The plaintiff introduced several witnesses as to declarations made by Richard Lord in his lifetime to show that he had given her the policy in suit. Emma J. McLellan testified that some time in 1894, before the issuance of the policy, Richard Lord told her that he would leave his sister provided for with life insurance; and in 1896 he said that he had taken out this policy for her; that he was not a man to save money, and that he had left her provided for in life insurance. Charles Vidor,

an insurance agent, testified that he was well acquainted and intimate with Lord; that five or six years ago he had asked Lord why he did not take out a life policy, and that Lord had replied that he had a policy for $10,000, and that was all he wanted, as he only had his sister to care for; that the policy was for the benefit of his sister and that he did not care to have any more. Louis Wortham, also an insurance agent, had a conversation with Lord in 1899, prior to his marriage, and also in 1896 or 1897, with reference to insurance. They were friends and their relations were intimate. The witness said that Lord told him that he had a policy in the New York Life for the benefit of his sister, of whom he spoke as "Kitty;" that the policy was hers. A. A. Green, Jr., testified that he was a life insurance manager and knew Richard Lord in his lifetime quite well; that in August, 1898, he had solicited him for insurance. That he said that he had one policy for $10,000 in the New York Life Insurance Company; that that policy was his sister Kitty's, and that he would like to have $10,000 additional insurance if he could stand the examination. Witness wrote his application, but the company applied to declined to issue the policy. This witness also testified: "When I came to ask him to whom he wanted this policy payable, he said, 'This policy in the New York Life is Katie's. * * * You know I am educating a girl. * * * Just make that payable to myself and I will arrange for that.'"

James Irwin, also an insurance agent, testified that Lord applied to him for insurance in December, 1899, about six months after his marriage; that the witness asked him if he had any insurance and he answered "yes," he had some for his sister "Katie." Witness suggested that he ought to take out some insurance for his wife, and he said, "if I thought you could get me through I would." Witness submitted Lord's name to the company represented by him and it wrote the $20,000 for the benefit of his wife. Neil P. Anderson testified that he resided in Fort Worth and was a general agent of McFadden Bros., in the cotton business; that Richard Lord had been in the employ of the firm from about 1891 or 1892 until his death; and that he had known him since 1887 or 1888. They were in business touch with each other every year, but Lord's office would be changed from year to year. The witness said: "I think it was in 1894, the latter part of that year, * * * Mr. Lord gave me some valuable papers in a sealed envelope to be cared for for him, asking me if I could take care of them in my safe. I told him yes; I would put them in my private till. When he handed them to me he says, "In this is a policy for my sister Kate." Witness kept the papers for about a year, when Lord called for them and he delivered them to him. The attention of the witness was not directed to any other paper in the package, and the matter was never mentioned again. It appeared from the evidence that Lord was a man of good business qualifications and understood the effect of the language of the policy, and knew what would be necessary to make it payable to his sister.

The court in effect instructed the jury that unless the insurance policy

in controversy was delivered to the plaintiff by Richard Lord, or to some person for her benefit, she would not be entitled to recover. Under this charge the verdict of the jury is a finding that the policy was delivered. It has been assigned as error by the defendant, Margaret G. Lord, that the evidence is not sufficient to support the verdict. That a chose in action may be the subject of a gift is well settled. But it is insisted that only the intention of the donor to give must be shown by the evidence, but that the gift can be completed only by delivery actual or constructive of the thing to be given, and that there is no evidence in the record here upon which the delivery of the policy of insurance to the plaintiff can be predicated. On the other hand, it is contended that the fact of the delivery of the policy may be implied from the evidence. Repeated declarations were shown to have been made by Richard Lord that he had insured his life for the benefit of the plaintiff, and that the policy in question, about the identity of which there can be no doubt, was his sister Kate's. After his marriage, when he procured insurance for the benefit of his wife, he is shown to have declared that the policy then held by him was for the benefit of his sister. Soon after the issuance of the policy he intrusted it to the witness Anderson for safe keeping in a sealed envelope with other valuable papers, but when he delivered the package to Anderson he told Andrson that in it was an insurance policy for his sister Kate. The policy being payable to his estate, the only reasonable construction that could be placed upon this statement to Anderson was that he was to hold it for the plaintiff.

It is true that when Lord called for the package about a year afterwards it was returned to him, and so far as the evidence shows the policy remained in his possession and at his death it was found locked up in a box with other papers in the custody of the bankers to whom he had intrusted it. But it was shown not only as a motive for the gift, but as explaining the possesssion of the policy by him, that Richard Lord and the plaintiff sustained towards each other the most endearing relations; that ever since she was a child twelve years old he had stood to her loco parentis, and had been her sole support; that he had provided liberally for her education and supplied all her wants. It was shown that but for such provision as he might make for her she would be left almost penniless at his death, and that he declared his intention to provide for her with life insurance and that he had done so. Not a syllable of the testimony shows that he could have had any motive for making the policy payable to his estate rather than directly to his sister, or that he could have desired to retain control of the policy in order that he might give any other direction to the payment of the proceeds. The motive of the gift and the intention to give are clearly shown. While in speaking of the matter Lord did not say "I have given" or "I gave" the policy to "my sister Kate," or make use of the word "give," yet he did say "the policy is Kate's." He said this repeatedly and used language in speaking of it that in the light of the relation of the parties to each other necessarily meant that he had given the policy to her. From these

declarations will it not be implied that the gift had been completed by delivery?

But there is the further fact that he had actually delivered the policy into the custody of the witness Anderson with the declaration that it belonged to his sister. He said, "in this [the package] is a policy for my sister Kate." The attention of Anderson was called to no other paper. Should it not be inferred that the purpose in making this declaration to Anderson was to make him the custodian of it for his sister? The policy had been procured but recently in accordance with a declared purpose to do so, and its delivery to some one for his sister would have completed the gift. She resided with her brother. He was to her in the place of a father as well as a brother. She had no property except an interest in some mining shares inherited from her father, and in Richard Lord's box at his death was found a power of attorney from her to represent her interest in it. There would be no other custodian than her brother for whatever property she had. This policy of insurance he had delivered into the custody of Anderson with the declaration that it was his sister's, and he had left it with him for a year, and it was taken from the custody of Anderson probably only when Lord moved from Fort Worth to some other place in the pursuit of his business. From the relation of the parties to each other and the declarations of Richard Lord, and giving due probative force to all the circumstances in evidence before them, the jury were authorized to imply the fact of delivery of the policy to Kate Lord. Although it may be conceded that in order to establish the gift it was necessary to show a delivery of the policy, yet this could be done by circumstantial evidence.

The general principles of law respecting gifts are well established and it would serve no useful purpose to set them out here. Each case must rest upon its own facts and assistance must be derived from the analysis of cases with analogous facts. In Chevallier v. Wilson, 1 Texas, 161, and Hillebrant v. Brewer, 6 Texas, 45, the Supreme Court of this State has enunciated these principles as applied to facts in the one case where no delivery was shown and in the other where there was a constructive delivery. The cases of Richardson v. Hutchins, 68 Texas, 81; Brown v. Brown, 61 Texas, 56, and Gonzales v. Adoue, 58 Southwestern Reporter, 951, are useful in the consideration of the case before the court, but in each of these cases the question of delivery was affected by the relation of husband and wife between the parties, since under the marital law of this State the husband is entitled to the control and possession of the wife's property. The decision in Richardson v. Hutchins, however, was not rested upon the right of the husband to the custody of the bonds. There are cases cited by counsel for the appellant in which the facts tend strongly to support their contention that a completed gift was not shown. But the most analogous case is Malone's Appeal, cited by counsel for the appellee, Kate Lord, from Pennsylvania, from the Orphan's Court of Philadelphia (37 Legal Intelligencer, 63), affirmed by the Supreme Court of Pennsylvania (38 Legal Intelligencer, 303).

Malone took out an insurance policy on his life for $5000, payable on its face to his personal representatives. Afterwards he married the claimant. Just before his marriage he said to her, "If anything should happen after marriage you will get this $5000, because I took out this policy, and it is yours." No policy was seen in his possession at the time, nor was he seen to give her any, but a policy of insurance in the company named was afterwards seen in a drawer of the wardrobe which was used by himself and wife. He repeatedly declared afterwards to various persons that the policy was his wife's. After marriage he took out two other policies of insurance specifically payable to his wife. For many years prior to and at his death the policy in question was continuously in the fire-proof receptacle belonging to the firm of which he was a member, and the premiums upon it during the latter part of decedent's life were paid out of the firm's money. The contest was between creditors and the widow who claimed the benefit of the policy.

The Supreme Court affirmed the decree on the opinion of Judge Penrose of the Orphan's Court. In that opinion Judge Penrose said: "Unless the uncontradicted testimony of six witnesses be rejected, it must be conceded that the decedent repeatedly, and in the most unequivocal and explicit terms, declared that he had given the policy of insurance, taken out by him shortly before his marriage, to his wife, and that it belonged to her. * * * That the wife's claim might be thus established is clear, both in reason and authority." Citing Hackney v. Vrooman, 62 Barb., 666; Gray's Estate, 1 Barr, 327; Wesco's Appeal, 2 Smith, 195. "The declarations were against the husband's interest, and were deliberate, precise, and consistent with each other. * * * The right of the wife is denied: (1) Because there was no written evidence of assignment to her. (2) Because there was no direct evidence of delivery. (3) Because at the time of decedent's death the policy was, and had been for a number of years, in the fire-proof of the firm of which he was a member. * * * (5) Because premiums on the policy were paid by the firm. * * * It is clearly shown by the American authorities, if not also by the English, that any act on the part of the owner of a chose in action, showing not only a persistent intention to transfer, but that he regarded himself as having carried such intention into effect, is sufficient, and that no written evidence of the transaction is required. * * * It was held at an early date that gifts, causa mortis, of choses in action, as, for example, of a bond or of a policy of insurance, might be made by mere delivery. * * * Later decisions have established the principle that there is no difference in this respect between gifts causa mortis and gifts inter vivos." Citing Grover v. Grover, 24 Pick., 265; Hackney v. Vrooman, 62 Barb., 650; Wing v. Merchant, 57 Me., 383; Camp's Appeal, 36 Conn., 88. "In all these cases it was decided that a valid gift of a chose in action might be made inter vivos without writing, and by mere delivery. * * * With regard to the proof of actual delivery, it is not necessary that the witnesses shall have seen it take place. * * *

The delivery may be proved by the declarations of the donor, just as the gift itself may be; and when the donor declares that he had given at a previous time, and that the donee had then become.the owner, it is implied that delivery, and indeed every other formality necessary to create a complete gift, had taken place.  The law always presumes knowledge of its requirements.  *  *  *  Upon the whole, we think that a valid gift of the policy of insurance in question by the decedent to his wife was fully established."

Other cases might be cited, all to show that while there can be no doubt but that delivery of possession is necessary to constitute a valid gift, yet this is a matter of fact upon which the jury must pass, and unless.this court can say that there are no facts from which the delivery could be implied, or that the evidence against the finding of the jury so far preponderates over that in its favor as to show that the jury was influenced by passion or prejudice, the verdict should not be set aside. A distinction should be observed between cases where it is held that the evidence is of not sufficient probative force or there is no evidence, and those cases where slight evidence that of itself might be sufficient to support the verdict is so far outweighed by affirmative evidence against it as to lead all reasonable minds to the opposite conclusion.  The case before the court is one in which it is necessary only to consider the sufficiency of the evidence to prove the issue, and not one in which slight evidence is outweighed and overcome by other evidence.  Were the relation of the parties to each other, the repeated declarations of Richard Lord, and all the facts in the case of sufficient probative force to support the finding of the jury that Richard Lord gave the policy of insurance to his sister?  If so, the verdict should be sustained.  There is no fact inconsistent with this conclusion.

We do not decide that a parol assignment of. the policy would be a completed gift of the proceeds without delivery, as there is perhaps much reason to hold from the decision in Cowen v. National Bank. Nor do we put our affirmance of the judgment of the court below upon the ground that although a delivery of the policy might not have been shown, the facts were sufficient to constitute Richard Lord a trustee for his sister.  Neither of these questions are necessary to a decision of the case according to the views of the majority of the court and we express no opinion as to them.

A part of the testimony of Miss Kimball and Mrs. Morrison, the admission of which is complained of as hearsay, was probably objectionable on that ground.  But the matters testified to were so fully and clearly established by other unchallenged testimony that its admission could not have affected the verdict of the jury, especially when it is considered that none of the testimony objected to had any other effect than to show the relationship between the parties, and that Richard Lord was supporting his sister and had entire charge and care of her from the death of her mother until his own death, a circumstance other-

wise abundantly shown as above stated. Family history as to the death of the father in South America made the evidence of his sister, Mrs. Morrison, to that effect admissible. The objection to the testimony of Louis Wortham and Mrs. McLellan as shown by the seventh and tenth assignments of error, can not be sustained for either of the reasons given. The evidence showed that no other policy could have been referred to than the one in controversy, because it was the only insurance Lord had at the time of the conversation with Wortham and until after his marriage. Lord's declarations were admissible to establish the gift. They were against interest, and although the policy may at the time have been in his possession, such possession was perfectly consistent with the relation that he bore the donee. As held in the case of Cowen v. National Bank, the Revised Statutes concerning gifts does not apply to choses in action, and it was not necessary that the possession of the policy should have remained with Kate Lord, even if Richard Lord's relation to her loco parentis were not sufficient explanation. He may have held it as her agent. The testimony of Anderson was properly admitted. As already stated, there could be no doubt about the identity of the policy. Lord's statement that the policy was his sister Kitty's, made to Green, did not tend to vary the terms of a written instrument, because the policy after it had been executed in terms payable to his estate was subject to gift.

We find no error in the admission of the testimony of the witnesses as shown by the eleventh, twelfth, and thirteenth assignments of error as to the declarations of Lord. The charge of the court was as favorable to the defendant, Margaret G. Lord, as it could have been, and since, as above stated, the statute concerning the gift of goods or chattels does not apply to choses in action, there was no error in the failure of the court to charge the jury that the possession of the policy must have remained with the plaintiff. We find no error in the charge for which the judgment should be reversed; and according to the view the majority of the court have taken of the case there was no error in the refusal of the requested special instructions complained of in several assignments of error that need be specially referred to, as our reasons above given will also apply to them.

The judgment of the court below will be affirmed.

*Affirmed.*

### DISSENTING OPINION.

PLEASANTS, ASSOCIATE JUSTICE.—I can not concur with the majority of the court in holding that the evidence in this case is sufficient to sustain the finding of the jury that the insurance policy, which is the subject matter of the suit, was given by Richard Lord to the appellee. The opinion of the majority of the court is predicated upon the assumption that the law requires proof of delivery either actual or constructive

of the thing given to support a gift inter vivos, though it intimates that the decision of the Supreme Court in the case of Cowen v. National Bank, 63 Southwestern Reporter, 532, might authorize the holding that mere proof of the parol gift of the policy of insurance unaccompanied by any proof of delivery would be a completed gift of the proceeds of the policy. I do not think the decision in the Cowen case can be so construed, for in that case a written order for the certificate of deposit was shown to have been actually delivered to Cowen by the donor, and the Supreme Court merely held that the delivery of the order for the certificates operated to pass title to the funds in the bank just as the delivery of the certificates would have done.

The majority of the court also decline to pass upon the issue as to whether the facts are sufficient to show that Richard Lord held the policy in controversy in trust for his sister, and do not require that the judgment of the court below should be sustained on this ground regardless of whether there was any delivery of the policy. The appellee in his brief presents this trust theory with much force, but I am of opinion that his contention is not sound and that a trust can not be established by evidence merely showing an incomplete gift. I think it is well settled that equity will not interfere to perfect a defective gift by declaring a trust which the donor himself did not declare. There is nothing in any of the declarations of Richard Lord in evidence in this case from which it can be inferred that he regarded himself as holding the policy in trust for his sister. That he intended at the time he took out the policy and when the various declarations shown in the evidence were made to give this policy to his sister I think is unquestioned, the only question being whether this intention was ever carried out in the manner required by law, and as a court of equity has no authority to render a gift perfect which the donor has left imperfect, neither can it convert an imperfect gift into a declaration of trust merely on account of the imperfection. To hold otherwise would be to nullify and destroy the universal rule that delivery of possession is essential to the validity of a parol gift. The only question in my opinion which arises upon the facts of this case is whether the evidence is sufficient to sustain the finding of the jury that Richard Lord delivered the policy to the appellee or to some person for her. The charge of the court makes the plaintiff's right to recover depend upon an affirmative finding of this fact by the jury, and the verdict of the jury in favor of the plaintiff is a finding by them that such delivery was shown.

I fully appreciate the importance of a strict adherence by the courts to the rule that upon all issues of fact the verdict of the jury is conclusive unless it is unsupportable by any evidence legally sufficient, or is so against the great weight and preponderance of the evidence as to be clearly the result of passion, prejudice, or undue influence. But the very statement of the rule implies that the verdict of a jury must not be an arbitrary one, and the duty devolves at last upon the court to pass upon the sufficiency of the evidence in all cases. Mere possibility can

never establish the existence of a fact requisite to be proven. To so hold is to say that verdicts can rest upon surmise and conjecture. Whenever a judge concludes that a verdict is without sufficient evidence to support it, that is, that the existence of facts found by the jury is not a reasonably probable conclusion from the evidence in the case, it becomes not only the right but the duty of the court to disregard such verdict. If this duty is evaded by our courts, then our system of jurisprudence can not be maintained consistent with well defined rules of justice and right.

Applying these principles to the case at bar, I am of opinion that there is no evidence in this case which makes it reasonably probable that the policy in question was ever delivered by the deceased to the appellee. The evidence upon this issue is fairly and accurately stated in the opinion of the majority of the court with one omission, which is probably of slight importance, but which I think should be given some weight. The fact not stated in that opinion is that the policy in question was not an ordinary life policy payable only on the death of the insured, but was what is known as an accumulation policy, which had a cash surrender value which Richard Lord might have withdrawn at any time. I think this fact has some weight as tending to show that notwithstanding Lord's repeated declarations that he intended to take out the policy for his sister and that said policy was for her, he made the policy payable to himself so that he might surrender it at any time and withdraw its cash value and make such other provision for his sister as the circumstances and his judgment might suggest. In order to draw a proper conclusion from the various declarations of Lord set out in the opinion of the majority of the court, all of said declarations should be considered together and in connection with all of the circumstances shown by the evidence.

Lord was a man of large business experience, well acquainted with all of the details as to the issuance of insurance policies and the method by which the beneficiary named in the policy might be changed or the policy assigned. He had supported and provided for his sister from her infancy, and managed and controlled all of her business affairs. Before the insurance policy is taken out he tells Mrs. McLellan that he intends to provide for his sister with life insurance and some time after the policy is issued he tells her that he had taken out a policy for her. Shortly after the issuance of the policy he hands to his friend Anderson a bundle of papers in a sealed package and asks him to keep them for him, telling the witness that among the papers is a policy for his sister. Subsequently he tells Mr. Vidor that he has this policy for the benefit of his sister Kate. In 1898 he tells the witness Green that this policy is his sister Kate's. In 1899 he makes the same statement to the witness Wortham, and also tells the witness Irwin that he has this policy for Kate. The three witnesses last named were insurance agents, and the statements to them by Lord in regard to the policy were made during conversations in which they were soliciting him to take out life insurance. After his marriage with the appellant, Margaret G. Lord, he

takes out an accident policy payable to his sister Kate, and makes his will giving all of his property of every description to his wife. The policy claimed by the appellee in this suit is payable to Richard Lord, his assigns, executors, or administrators, and was not assigned or transferred in the manner designated by the insurance company nor by any written assignment of any kind. It is not shown that said policy was ever at any time in the possession of the appellee or was ever seen in any receptacle to which she had access. I think these facts and circumstances, considered together, lead the mind to the irresistible conclusion that the statement of Richard Lord that the policy was his sister's meant nothing more than that his object in taking it out was to provide for her support in event of his death, and that he made it payable to himself so that he could retain absolute dominion and control over it, and in event he should change his mind as to its final disposition he could do as he pleased in regard to it. The evidence fails to show that he ever changed his intention to make his sister the beneficiary of said policy, and I think it also utterly fails to show that he took the steps necessary to carry this intention into effect.

It matters not how clearly the intention of the donor may appear, if he fails to do that which the law requires to complete his intended gift no court can do it for him, and his intention, however praiseworthy, must fail.

The majority of the court have reached the conclusion that the declarations of Lord, taken in connection with other facts in the case, are sufficient to support the finding of the jury, and they say that there is no fact in evidence inconsistent with this conclusion. To my mind such conclusion is contradicted by every fact in the record. It is inconceivable that a man of the intelligence, business experience, and knowledge of affairs which Lord is shown to have possessed, with a desire to make the gift to his sister of this policy or its proceeds absolute and complete, would not have assigned the policy to her or had her named as its beneficiary, or so disposed of it in his will. He must have known that in case of his death, with the policy in his possession and payable to his estate, her title to it would be very difficult of establishment, and his failure to assign the policy, which was a simple act, can only be reasonably accounted for on the assumption that while he may have had the intention to at some time complete his gift, the time never came when he was ready to surrender dominion and possession of the property so as to make the gift absolute.

I do not think the testimony of Anderson can be held sufficient to show that the policy in question was given him by Richard Lord to hold for his sister. The statement of Lord was to the effect that the policy was for his sister. He did not ask Anderson to hold the policy for his sister, and I think no such construction can be given to his language, and Anderson did not so construe it. The policy was in a sealed package containing other papers belonging to Lord, and was held by Anderson for Lord and delivered to him on his reque    The evidence fails

to show that it was the understanding either of Lord or of Anderson that the latter should hold the policy in trust for Miss Lord, and it can not be said that the delivery of the policy to Anderson under these circumstances was a delivery to him for the benefit of Miss Lord. The Pennsylvania case cited by the majority of the court to sustain their opinion, as shown by the statement of the case, arose upon facts materially different from the case at bar. That policy was seen in a drawer to which the wife had equal access with the husband, and the declaration of the husband was that he had "given" the policy to his wife, and while I do not assent to the soundness of the decision in that case, the facts in support of that opinion are much stronger than in the case at bar. This seems to be the only case which counsel for appellee or my associates could find which tends to sustain the conclusion reached by the majority of the court.

In direct conflict with the decision in the Malone case is the opinion in the case of Chambers v. McCreery, 106 Federal Reporter, 364. The plaintiff in that case claimed certain bonds as a gift from her deceased husband. The bonds had been kept for some years by her husband before his death in a box in a safe deposit vault, and after his marriage he stated to the custodian that he wished his wife to have access to the box, and a statement to the effect that she was authorized to have access to the box and control its contents was placed therein. After his death, complainant had both keys to the box in her possession, but there was no evidence that her husband had given her this key with the intent to divest himself of the title to or possession of the bonds. Four witnesses testified that Edward Prince said in their hearing he had given to his wife for her own use some bonds he had in the deposit vault, that no one knew he had such bonds, but he made her a present of them, that he gave her the key to the box or drawer, and had introduced her at the bank, so that she could have access to the box any time she saw fit to go to it, and so that she would not be dependant upon his children after his death, he had provided her with some bonds which she kept in the Third National Bank in Cincinnati, put there in her name.

Upon this state of facts, which are much stronger in favor of showing a delivery than the facts in the case at bar, the court uses the following language: "We search the record in vain for any testimony showing that Edward Prince ever delivered the possession of the bonds in controversy to the complainant, Lockey F. Chambers. On this point the evidence should be clear and positive, and in the absence of proof of absolute possession of the subject of the gift by the donee, free from the control of the donor, the mere declarations of the latter will not be sufficient to establish a delivery." And again: "A gift inter vivos goes into immediate effect, is absolute and irrevocable, and to render it complete there must be an actual delivery of the subject matter of the gift, the manner of delivery being to a great extent governed by the character of the thing delivered, but without such delivery the title does not pass. The effect of the delivery is that the donor parts not only with the pos-

session but with the dominion over and control of the property so delivered." And again: "The declarations of Prince that he had given the bonds in the box to his wife will not aid her in her claim to them, unless they are accompanied with the proof of such absolute delivery as divested him of his title to them and rendered it impossible for him to have again exercised control over them. It is now well settled that the declarations of the donor, that he had given the thing in controversy to the claimant, will not perfect a gift incomplete for want of actual delivery, and the fact of delivery must be shown by other evidence than the mere declarations of the donor. A number of authorities we have cited refer to cases causa mortis, but they are nevertheless applicable, for, in so far as the question of delivery is concerned, there is no difference between gifts of that character and gifts inter vivos, as actual delivery is absolutely essential in both cases."

The soundness and wisdom of the rule which requires proof of delivery of possession to complete a parol gift can not be more forcibly shown than by quoting the language of Judge Hemphill in the case of Chevallier v. Wilson, 1 Texas, 161. In this case the plaintiff sued for a negro girl which she claimed had been given her by her deceased mother. After deciding that plaintiff could not recover because the facts showed that possession of the girl had never been delivered to her, the court says: "Here the parties are of full age, and no doubt can be entertained of the intention of the mother that the petitioner should be the recipient of her bounty; but if the necessity of delivery or change of possession of property be dispensed with in one instance, it must in all. If the rule be relaxed, how easy would it be, out of the most unimportant circumstance from the slightest acknowledgment, to frame evidence of donations which could be buried or brought to light as occasion might require; and which might strip the heirs at law, and in natural affection, of all the property of a deceased relative; or which among children equally beloved might produce the most odious discrimination in the distribution of the parent's property. In moments of playfulness or anger, or of excited feelings, parents may make loose declarations of their having given property to this or that one of their children, and those ebullitions of sportiveness or temporary feeling may, after being concealed for years, be set up as a bona fide disposition of property; and, if sustained, may operate the highest injustice and produce discord and animosities among those whom the ties of policy and nature combine to unite together. As a general rule those verbal gifts should be watched with jealousy by the courts. They are frequently supported on a very flimsy foundation; and being concocted in secret, they are difficult to be resisted and can only be effectually restrained by establishing the rule that there must be delivery and change of possession, or some notorious change of property, where the possession still remains with the donor."

Believing that to sustain the verdict of the jury in this case upon the evidence disclosed by the record is to virtually destroy the rule which requires proof of delivery of possession to complete a parol gift, I am

constrained to respectfully but earnestly dissent from the conclusion reached on this issue by the majority of the court, and am of opinion that the judgment of the court below should be reversed and here rendered for the appellant, Margaret G. Lord.