In re Estate of Alfred Thompson, Deceased.
Henry C. Roberts, Appellant, v. John T. Dempsey,
Administrator, Appellee.

Gen. No. 43,604.

Opinion filed
February 14, 1946. Rehearing denied February 26, 1946. Released
for publication February 26, 1946.

C. Francis Stradford, of Chicago, for appellant.

Prescott, Burroughs & Taylor and Don M. Peebles, all of Chicago for appellee; A. Morris Burroughs and Euclid Louis Taylor, both of Chicago, of counsel.

Mr. Justice Sullivan delivered the opinion of the court.

Alfred Thompson died August 19, 1943 and the public administrator (hereinafter for convenience referred to as the administrator) was appointed to administer his estate. Shortly thereafter Henry C. Roberts, the president of a waiter's union, of which Thompson was a member, delivered to said administrator, upon the latter's written request, a group life insurance policy for $2,000 issued to Alfred Thompson by the Prudential Insurance Company of America. Thompson had named his wife "Salena Thompson," as beneficiary of the insurance payable under the policy but she was not living at the time of his death. The policy provided that "if there be no Beneficiary living at the death of said employee the amount of insurance shall be paid to the executors, administrators or assigns of said employee." The administrator collected the insurance. On December 6, 1943 Roberts filed a petition in the probate court in which he alleged that Thompson delivered said insurance policy to him two days before he died as a gift *causa mortis*. This petition concluded with the prayer that "John T. Dempsey, administrator, be directed to pay the proceeds of said Prudential group policy to your petitioner after the payment of funeral expenses in the sum of $330.50 to Metropolitan Funeral Parlors, debts that may be filed and allowed against said estate and costs of administration." The probate court entered an order denying the petition and Roberts perfected an appeal from such order to the circuit court, which after a

hearing *de novo* entered a judgment order wherein it found that the decedent Thompson "in contemplation of his impending death from an existing disorder, delivered said policy as a gift to Henry Roberts on the 17th day of August, 1943, and that the said Alfred Thompson within two days thereafter, to-wit, on the 19th day of August, 1943, died of said existing disorder"; and then held as a matter of law that "an insurance policy, payable to the executors, administrators or assigns of the insured, can not be the subject matter of a gift causa mortis."

Roberts appeals from the judgment order in so far as it holds as a matter of law that "an insurance policy, payable to the executors, administrators or assigns of the insured, can not be the subject matter of a gift *causa mortis*," regardless of the donor's desire and intention to make such a gift. The administrator assigns cross-error as to that portion of the judgment order which found that Alfred Thompson in contemplation of his impending death made a gift *causa mortis* of the insurance policy to Henry C. Roberts. It was stipulated upon the trial that the total assets of Thompson's estate were $2,285.45, which included the $2,000 proceeds of the insurance policy collected by the administrator, and that claims were allowed against the estate aggregating $813.48. As has been seen, Roberts seeks to be awarded the difference between the face amount of the policy and the claims allowed against Thompson's estate, plus the costs of the administration thereof.

We will first consider the administrator's contention that the trial court erred in finding that Thompson made a gift *causa mortis* of his insurance policy to Roberts. While it might seem that Roberts' claim to ownership of the insurance policy or to any part of the proceeds thereof was purely an afterthought since he advanced no such claim when he voluntarily delivered the policy to the administrator upon the latter's

request and while it might also seem unlikely and improbable that Thompson would make a gift of the policy to him, two apparently disinterested witnesses testified positively to facts which established all of the essential elements necessary to constitute a valid gift *causa mortis* of the insurance policy to Roberts by Thompson.

Bernard Keesee testified that he was a member of the executive board of the waiter's union to which Thompson belonged and of which Roberts was president; that upon learning that Thompson was ill he went with Roberts to visit him in his room on August 17, 1943; that after they inquired about his health, Thompson asked Roberts "to go out and get Mrs. Anderson . . . there was something he wanted her to know"; that when Mrs. Anderson returned with Roberts, Thompson told her, "I am going to die, and want Mr. Roberts to have my insurance policy"; that the decedent "then took the insurance policy out of his safe beside his bed, and give it to Mr. Roberts"; that Roberts "discouraged the idea . . . he said he would take him to the hospital and see he got the best of care, he would get well"; and that on the same day Roberts took Thompson to the hospital, where he died two days later.

Hazel Anderson testified in substance that the decedent lived at 5421 South Michigan avenue and that she lived at 5423 South Michigan avenue; that on August 17, 1943 Roberts came to her apartment and told her that Thompson wanted her to go to his room; that when she arrived at Thompson's room with Roberts, Keesee was there with the decedent; that Thompson said "he was going to die, he wanted Mr. Roberts to have the insurance because he had done more for him than any one . . . Mr. Thompson gave Mr. Roberts his insurance policy"; and that later that day Roberts came back and took Thompson to the hospital, where he died two days later on August 19, 1943.

Blondetta Glover testified in substance in behalf of
the administrator that she had lived with Thompson
for six years prior to January 1943 "as man and
wife"; that he was not sick when she stopped living
with him; that after he became ill she visited him
nearly every day; that she saw him on August 16, 1943,
the day before he was taken to the hospital; that when
she was with him that day he "told me to get a policy,
he wanted to get in touch with Roberts, so Roberts
could take it to Mr. Cole in the Palmer House and get
a certain portion of that money, so he could go away
to a sanitarium to be cured"; that at that time the
policy "was in a large purse that I kept in the chif-
ferobe drawer"; that she took the policy from the
drawer and gave it to Thompson; that at the deced-
ent's request she telephoned Roberts but he was not
in his office and she left word for him that Thompson
wanted to see him; that during the time she lived with
Thompson she never saw Roberts visit him; that as
far as she knew Thompson had no available cash ex-
cept a joint bank account with her in the First Na-
tional Bank in which there was about $175; that "he
had planned on going to the hospital, which is the rea-
son he turned the policy over to Mr. Roberts  .  .  .
the first time was when he gave the policy to Mr.
Roberts to take to Mr. Cole to get a portion of the
money, so he could go away to a sanitarium"; and
that Thompson told her that he thought he needed
"five hundred dollars, maybe three or four."

William W. Williams, testified in the administra-
tor's behalf that he had known Thompson for about 50
years; that he "saw him about five times a week, all
along until about two weeks or three weeks before he
died"; that on August 6, 1943 he went to Louisville,
Kentucky and did not return until Thompson was in
the hospital; that the last time he saw Thompson be-
fore he went to Cleveland the decedent "was feeling
pretty bad, but he was not in bed  .  .  .  so I would

go out nearly every evening and sit and talk with him''; that he went to see him one evening in July 1943 on which occasion ''he went in a little safe, he got out a policy and wanted me to take it home''; and that ''he always figured some one was going to take something from him . . . I knew he was feeling bad . . . I told him I would get them some other time.''

The trial judge saw these witnesses and heard them testify and since he was in a better position than we are to determine their credibility and the weight to be given their testimony, we do not think that we would be warranted in holding that the finding under consideration was against the manifest weight of the evidence.

Roberts contends that the trial court erred in holding that ''as a matter of law, an insurance policy, payable to the executors, administrators or assigns of the insured, can not be the subject matter of a gift *causa mortis* by actual delivery of the policy to donee by a donor, in contemplation of his (donor's) impending death from an existing disorder, from which existing disorder the donor dies within a few hours, notwithstanding donor's desire and intention to make such a gift.'' In other words it is insisted that the trial court erred in holding that a policy of life insurance payable to the personal representative of the decedent cannot be made the subject of a gift, regardless of the fact that all of the essential elements of a gift *causá mortis* have been shown by the evidence. In so far as we have been able to ascertain this precise question has not heretofore been considered or determined by any court of review in this State. However, the general rule is that ''a policy of insurance on the life of the donor may be made the subject of a gift in the same manner as any other chose in action'' and that ''the gift of a policy of life insurance is valid, in the absence of a written assignment, provided there is a

delivery of the policy by the donor to the donee.'' 47 A. L. R. 738, 740. This general rule is also enunciated in 24 Am. Jur., sec. 70, p. 766; 38 C. J. S., sec. 98, p. 911 and Annotated Cases, 1914 D, 294.

In *Gordon v. Clark,* 149 Ark. 173, 232 S. W. 19, the decedent prior to his death made a gift *causa mortis* of certain property including two insurance policies. The subject matter of the gift was not delivered directly to the donees but to one Wilmot Clark, Jr., who was instructed by the decedent to divide such property equally between his own mother and the mother of his deceased wife. Wilmot Clark, Jr., was appointed administrator of the decedent's estate and he as well as the donees were made defendants in a suit in equity instituted by the heirs at law of said decedent to compel the donees to turn over the subject matter of the gift to the administrator for distribution to said heirs at law. There the Supreme Court of Arkansas said at p. 22:

''The delivery of the life insurance policies was complete, and it is well settled that life insurance policies payable to the legal representatives of the insured may be transferred by a mere delivery without a written assignment. *Gledhill v. McCoombs,* 110 Me. 341, 86 Atl. 247, 45 L. R. A. (N. S.) 26, Ann. Cas. 1914 D, 294. In a case note to the latter citation on page 297 it is said that the general, if not universal, rule is that a policy of insurance on the life of the donor may be made the subject of a gift in the same manner as any other chose in action and numerous decisions are cited in support of the rule.

''Again on page 298 of Ann. Cas. 1914 D it is said that the gift of a policy of life insurance is valid in the absence of a written assignment provided there is a delivery of the policy by the donor to the donee, and numerous cases are cited in support thereof. In such cases the courts make no distinction between bonds or promissory notes and policies of life insurance. Each

is held to be a contractual obligation to pay money at a certain time so that it is said that, if the mere delivery of a promissory note without indorsement is sufficient to entitle the donee as against the donor and his representative to demand and receive the money from the obligor, no reason can be perceived why under like circumstances the donee of a life insurance policy should not be vested with like rights.''

In *Gledhill v. McCoombs*, 110 Me. 341, 86 Atl. 247, 45 L. R. A. (N. S.) 26, Ann. Cas. 1914 D, 294, the Supreme Court of Maine said at pp. 248 and 249 of the last mentioned report:

''In view of the overwhelming authority that a policy of life insurance, payable to the legal representatives of the assured, may be made the subject of a gift, in the same manner as other choses in action, and that such gift may be effected by the mere delivery, without assignment of the instrument, if accompanied by such words or acts on the part of the donor as indicate a clear intention to give, coupled with the subsequent retention by the donee, it cannot be seriously contended here that, if the necessary elements of fact are proved, the gift was not consummated.

''Thus a valid gift of a negotiable promissory note may be made without indorsement or other writing [citing cases]; of a savings bank book unaccompanied by an assignment [citing cases]; of unindorsed certificates of stock [citing cases]; and of an unassigned life insurance policy (*Chapman v. McIlwrath*, 77 Mo. 38, 46 Am. Rep. 1; *Hani v. Germania Life Ins. Co.*, 197 Pa. 276, 47 Atl. 200, 80 Am. St. Rep. 819; *Travelers' Ins. Co. v. Grant*, 54 N. J. Eq. 208, 33 Atl. 1060; *Knowles v. Knowles*, 205 Mass. 290, 91 N. E. 213; *Opitz v. Karel*, 118 Wis. 527, 95 N. W. 948, 62 L. R. A. 982, 99 Am. St. Rep. 1004; *Lord v. N. Y. Life Ins. Co.*, 27 Tex. Civ. App. 139, 65 S. W. 699). . . . In the case at bar the policy did not belong to the estate; and the defendant, as administratrix, had no rights in it.

It is true that, as the naked legal title remained in the estate, it must be collected in her name. But she was simply the agency therefor, the conduit through which the proceeds were to pass to their true owner. Her position was nominal merely. The plaintiff could doubtless have maintained an action against the insurance company, if necessary, in the name of the equitable assignor; that is, in the name of the defendant as administratrix. (*Borneman v. Sidlinger,* 15 Me. 429, 33 Am. Dec. 626), and even against the protest of such administratrix (*Bates v. Kemption,* 7 Gray [Mass.] 382; *Pierce v. Savings Bank,* 129 Mass. 425, 37 Am. Rep. 371). The defendants refusal to sue or to have her name used could not destroy the plaintiff's rights under the policy. The proceeds, when collected, belonged to the plaintiff and not to the estate. The defendant had neither the right nor the power to treat the proceeds as a part of the estate . . . ."

Thus it clearly appears from the foregoing authorities that the general rule is that a policy of insurance on the life of the donor, the proceeds of which are payable to his legal representative, may be made the subject of a gift *causa mortis* without a written assignment thereof, when the policy is actually delivered to the donee.

The administrator asserts that this is "an action at law" and not "a bill in equity" and that Roberts "should have held the insurance policy and forced the insurance company to file a bill of interpleader in a court of equity, and then asked for equitable relief."

██ Of course Roberts could have resorted to a court of equity to establish his title and right as donee to the insurance policy and the proceeds thereof but it was unnecessary for him to do so. Having received the policy as a gift, he knew that the proceeds thereof could be reached by the administrator to the extent necessary for the payment of claims allowed against Thompson's estate and the costs of the administration

thereof, if there were not other assets in the estate sufficient to pay such claims and costs. We fail to see where Roberts is in any different position than he would have been in, if he had refused to comply with the request of the administrator to turn over the policy to him. If he had so refused, the administrator as a matter of course would have cited him before the probate court to show by what right he retained the policy. The parties then would have been in the identical position that they are now in as the result of the filing of Roberts' petition in the instant case. While other remedies might have been pursued by Roberts to assert his right to the policy, he selected the simplest remedy by instituting this proceeding in the probate court where the equities of both parties could be determined, including the administrator's right to set off the amount of the claims allowed against the estate and the costs of the administration against the proceeds of the policy. The administrator seems to intimate that the probate court is purely a court of law but such is not the fact. It has been repeatedly held that probate courts have equitable jurisdiction in matters pertaining to the administration of estates. (*In re Estate of Cunningham*, 324 Ill. App. 210; *Trego v. Estate of Cunningham*, 267 Ill. 367; *In re Estate of Kinsey*, 261 Ill. App. 481; *Harris v. Harris*, 116 Ill. App. 537.)

For the reasons stated herein the judgment order of the circuit court of Cook county is reversed in so far as it decreed that "the appeal of the said Henry Roberts from the order entered by the Probate Court on 2nd day of August, 1944, be dismissed" and held "as a matter of law, an insurance policy, payable to the executors, administrators or assigns of the insured, can not be the subject matter of a gift *causa mortis* by actual delivery of the policy to donee by a donor, in contemplation of his (donor's) impending death from an existing disorder, from which existing

disorder the donor dies within a few hours, notwithstanding donor's desire and intention to make such a gift.'' The cause is remanded with directions that Henry C. Roberts be granted the relief prayed for in the petition involved herein filed by him in the probate court.

*Judgment order reversed and cause remanded with directions.*

FRIEND, P. J., and SCANLAN, J., concur.