The **FRANKLIN LIFE INSURANCE COMPANY**, Plaintiff,

v.

Marnell **FALKINGHAM**, Defendant-Appellant,

and

Citizens National Bank of Waco, Defendant-Appellee.

No. 11538.

United States Court of Appeals
Seventh Circuit.

Jan. 24, 1956.

Rehearing Denied Feb. 24, 1956.

Delmar J. Hill, Chicago, Ill., for appellant.

Stephen R. Chummers, Chicago, Ill., L. Duncan Lloyd, Lord, Bissell & Brook,

Chicago, Ill., for Citizens Nat. Bank of Waco, defendant-appellee.

Before DUFFY, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

The Franklin Life Insurance Company, sometimes referred to herein as "plaintiff", filed an interpleader action in the district court, naming as defendants Marnell Falkingham, sometimes referred to herein as "Marnell", and Citizens National Bank of Waco, sometimes referred to herein as the "bank". Following a trial without a jury, a judgment was entered in favor of the bank, from a part of which Marnell appeals.

The evidentiary facts are established by uncontradicted evidence.

On March 15, 1951 plaintiff issued to George Cecil Falkingham,[1] husband of Marnell, at Waco, Texas, its policy insuring his life, and naming Marnell as beneficiary. The policy gave the insured a right to change the designated beneficiary, "subject to the rights of any Assignee, by filing at the Home Office of the Company, a written request therefor." No such written request was ever filed by him. The policy also provided: "No assignment of this Policy shall be binding upon the Company unless filed in duplicate at the Home Office, one to be retained by the Company and the other to be returned. * * * The insured, subject to the rights of any Assignee, may surrender, assign or pledge this Policy and receive any loan or non-forfeiture value or benefit or agree with the Company to any change in or amendment to this Policy, without the consent or joinder of any Beneficiary."

Marnell first saw the policy in March, 1951, when her husband handed it to her at their Waco home. Evidence of conversations between them then, and also in August, 1950 and in the Christmas holiday season of 1950, was received and

---

[1]. Sometimes herein referred to as "husband" or "insured".

later excluded by the district court, as hereinafter set forth.

He was 16 years older than Marnell.

When he gave her the policy she placed it in a box in which she kept her personal possessions, where it remained until after her husband died on April 30, 1953. She first took the policy out of the box on or about May 3, 1953.

On November 26, 1951 and November 21, 1952, the insured became indebted to the bank on promissory notes, in the sum of $2,289 and $4,841.20, respectively. These notes provided for interest, and, in addition, 10 per cent of principal and interest for attorneys' fees, if placed in the hands of an attorney for collection, or suit, or other proceedings, including bankruptcy and probate.

On March 31, 1953, the insured executed in duplicate an assignment to the bank of the life insurance policy, for the purpose of securing the aforesaid indebtedness. Both copies were sent to plaintiff about April 9, 1953, and entered on its records. On the date of the filing of this suit, August 13, 1953, the insured was indebted to the bank for principal and interest in the sum of $5,169.81. On the same day, plaintiff deposited with the clerk of the district court the sum of $10,000.

On November 10, 1953, the Probate Court of Cook County, Illinois, in administering the estate of the insured, allowed the bank's claim in the sum of $5,831.04, representing principal, accrued interest to the date of allowance and 10 per cent additional for attorney's fees, no part of which has been paid.

The district court on October 1, 1953 decreed *inter alia* that plaintiff was dismissed from the case and the court retained jurisdiction over both defendants, the issues between them and the balance of the fund in the registry of the court, namely $9,977.90, and on said date Marnell surrendered the policy to plaintiff. Thereupon the court ordered the clerk to pay to Marnell $3,500 out of the sum on deposit, leaving a balance of $6,477.90 to satisfy the indebtedness owing to the bank.

On June 1, 1955, the court filed findings of fact and conclusions of law. It determined that the delivery of the policy by the insured to Marnell was not a gift or an assignment thereof and did not affect the rights of the bank under the assignment to it by the insured. The court also found that the bank became entitled to recover the sum of $6,286.60, being $4,955.08 for principal, $760.01 for interest accrued to June 1, 1955 and $571.51 for attorneys' fees.

The court on the same day entered judgment in favor of the bank and against Marnell in the sum of $6,286.60 and costs, to be satisfied out of the funds on deposit and directing the clerk to pay the remainder to Marnell.

This appeal followed.

In this court Marnell contends, *inter alia,* that the district court erred in failing to find and decree that she became entitled to all the proceeds of the policy, that her testimony as to her conversation with her husband when he handed her the policy was admissible and the court erred in not considering it, that the court erred in holding that interest accrued on the bank's claim during the time the fund was on deposit in the court, that the bank was improperly awarded attorney's fees, and it was error to enter a personal judgment against her.

 1. The evidence shows that the policy in this case was delivered in Texas and its nature, validity and construction must be governed by the law of that state, 44 C.J.S., Insurance, § 52, p. 504, and an assignment of that policy is governed by the same law, inasmuch as the bank's assignment and the alleged assignment or gift to Marnell, both occurred in Texas (ibid 508). Questions in this case relating to remedies are governed by the law of the forum, which is Illinois. 44 C.J.S., Insurance, § 51, p. 503. Questions relating to jurisdiction, procedure and practice are governed by federal law.

2. Marnell claims the law to be that the uncontradicted evidence of a voluntary delivery of a policy by an insured to his wife, without other explanation, and the retention of it by her, gives rise to a presumption that the transaction was a gift. She relies on 6 Couch on Insurance (orig. ed., 1930) 5231, § 1458o. The consequences of such a presumption, which would have the effect of throwing the burden of proof upon persons (other than the wife) asserting rights under a policy after the death of the insured, might be so serious that we have read the only case cited by Couch in support of his text.[2] It is Wood v. Phoenix M. L. Ins. Co., 22 La.Ann. 617. It does not support Marnell's contention. The nearest it comes to a consideration of that point is this language:

> "We are not prepared to say that the possession of a written or printed policy of insurance is conclusive proof of a right to recover the insurance money. Such an instrument is merely the evidence of the contract, and is not negotiable."

▇▇▇ The title to a policy may be transferred without any endorsement thereon by the insured. Indeed, it is not necessary to effect that purpose that the insured should have executed any sort of a transfer. Title would pass by a verbal sale or gift accompanied by delivery. Nixon v. Malone, Tex.Civ.App., 95 S.W. 577, at page 583; Lord v. New York Life Ins. Co., 27 Tex.Civ.App. 139, 65 S.W. 699. However, in order that a parol assignment may operate as a gift it is necessary that that be the intention of the insured. Lord v. New York Life Ins. Co., supra, 65 S.W. at page 700. Whether that was the intention of the insured in the case at bar when he delivered the policy to his wife, is a matter which she was required to prove.

▇▇▇ In this case the facts fail to indicate that a parol assignment by way of gift was intended by the insured. Marnell was the beneficiary named in the policy. That fact alone would be a reasonable explanation of why her husband delivered the policy to her. Upon his death she would then be in a ready position to assert her rights as beneficiary in accordance with the terms of the printed contract, which would then be in her possession and available for action in making proof of claim. Moreover, no reason appears why the insured, if he had intended to make an assignment of the policy to her, would not have proceeded in the manner provided by the policy itself for the making of an assignment. His subsequent utilization of the method set up in the policy when he assigned it to the bank, indicates that he understood the policy's provisions in regard thereto. If he had intended to make an assignment to her by delivery of the policy, his subsequent written assignment thereof to the bank was at least inconsistent therewith. We have a right to presume he had ordinary intelligence, which would have indicated to him that, if he had disposed of the policy by assignment to his wife, he could not make a second assignment of the same policy to the bank. In making an assignment to the bank, he was, in effect, procuring forbearance from the bank upon his debts by assigning a policy which (Marnell claims) he had already completely disposed of. This conduct would amount to a fraud and we have no right to impute such an intention to the insured. No party to this case makes a charge of fraud against him.

But, argues Marnell, her testimony of conversations with her husband (excluded by the trial court) reveals that he had an intention to assign the policy to her.[3]

---

2. "§ 1458o. Possession of a policy of life insurance is not conclusive proof of the right of the holder to recover the money due on the policy. It is, however, prima facie evidence that the person holding it has title thereto, and, consequently, a right in the proceeds. But it is only prima facie, as the contract is not a negotiable one, and the claim to the money due thereon may be assigned by agreement outside of the policy."

3. She testified that in August 1950, she and the insured had been working to-

In view of our belief that no such intention appears from this evidence, it is unnecessary to determine whether it should have been excluded. He told her that "he did not want to leave her a widow without any money and would find some way to take care of her if she would stick with him." Obviously, he was speaking of his own death. He later procured and handed her the policy in which she was named as beneficiary. The purchase of life insurance making the insured's wife the sole beneficiary thereof is one way, indeed, the usual way, of providing for one's widow. It is certainly as probable, or more probable, that that was the way he found to take care of her, rather than by an outright gift to her of a policy naming her sole beneficiary. When handing her the policy, he said, "Here, Honey, is your insurance. Take it and keep it. You are the *beneficiary*.[4] And never let it go, regardless of what happens to me. It is yours."

Here was a mature man, experienced in business, who could read his policy understandingly and who knew enough about business practices that he later assigned it to the bank according to the method therein provided for.

In Toomey v. Toomey, 7 Cir., 98 F.2d 736, at page 738, we said:

"While it is true that no particular form of words is necessary to constitute an equitable assignment (Savage v. Gregg, 150 Ill. 161, 37 N.E. 312), there must be a clear manifestation of intent to assign, and such manifestation of intent is wholly lacking here."

In Weaver v. Weaver, 182 Ill. 287, at page 292, 55 N.E. 338, at page 339, the court said:

"No particular form of delivery is required. * * * The real test of delivery is this: Did the grantor, by his acts or words, or both, intend to divest himself of title?"

■ We do not believe that either with or without the excluded evidence, there is proof that the insured intended to divest himself of title to the policy when he handed it to his wife. The district court therefore did not err in awarding the proceeds of the policy to the bank to apply on the insured's indebtedness to it, with the balance thereof to be paid to Marnell.

■ 3. The bank's right to interest and attorneys' fees is based upon the provisions of the notes, the validity of which is not challenged. Neither in whole nor in part was the effectiveness of these provisions defeated by the pendency of litigation resulting from Marnell's unsuccessful assertion of her claim. The district court did not err in its allowance to the bank of interest and attorneys' fees.

■ 4. It was error to enter a personal money judgment against Marnell and in favor of the bank. This is true even though the judgment order directed the clerk of the court to pay the funds on deposit in the registry of the court, to the bank first, and the balance to Marnell, in satisfaction of said judgment. We therefore direct that the judgment be modified by eliminating therefrom the words "and against the defendant Marnell Falkingham". Lokey v. Ward, 228

gether, traveling, and were pretty well worn out. On one of their trips at about that time he referred to the fact that he was 16 years older than she and said that in the new business they did not have too much money and he did not want to leave her a widow without any money and would find some way to take care of her if she would stick with him. There were several similar conversations thereafter. Then, in the Christmas holiday

period that year he made reference to those conversations, saying he had not forgotten them, and told her that he was going to open a distributorship, that a new business was risky, that he did not want to leave her without any money, that he was going to find some way to take care of her, and that he was going to take out a policy of insurance and give it to her, that it would be hers.

4. Italics supplied for emphasis.

Ala. 559, 154 So. 802, 805; Hollander v. Friedman, 360 Pa. 20, 59 A.2d 892, 894.

It is unnecessary to consider the remaining contentions of Marnell. The judgment of the district court as modified, is

Affirmed.