### MISSOURI, KANSAS AND TEXAS RAILWAY COMPANY OF TEXAS v. GEORGE H. RUSSELL.

Decided June 14, 1905.

**1.—Cattle Shipment—Evidence Showing Injury to Cattle.**

Evidence of injuries to cattle during shipment considered, and held to sufficiently show that they resulted from the negligence of the carrier, and to warrant the amount of damages awarded therefor.

**2.—Same—Evidence—Statements of Agent—Admission Against Interest.**

A statement by the conductor of the train then transporting plaintiff's cattle, that the engine was defective, and that he knew he could not get far with it, was, since he was an agent of the defendant company, admissible as an admission against interest. Even if it was hearsay, there was no prejudicial error in admitting it, the defective condition of the engine being shown by other undisputed evidence.

**3.—Practice on Appeal—Objections to Evidence—Proposition Variant.**

An objection made to evidence as to the value of certain cattle, "that the witness was testifying to his opinion, and not as to facts," will not serve on appeal as a predicate for the proposition that "it was error for the court to permit the witness to testify what the market value of said cattle would be, if in good condition, for the reason that defendant is not responsible for the depreciation in weight and appearance of cattle naturally resulting from being transported," since only such objections as were presented in the trial court and stated in the bill of exceptions will be considered.

Appeal from the District Court of Cooke. Tried below before Hon. D. E. Barrett.

*Eldridge & Midkiff,* for appellant.

*Culp & Giddings,* for appellee.

NEILL, Associate Justice.—This suit was brought by appellee against appellant to recover damages to a shipment of cattle. The plaintiff alleged that the cattle were injured while being transported by defendant from Gainesville to Wichita Falls, by being "subjected to great, unnecessary and unusual violence or rough treatment occasioned by defendant's agents in operating its train and to the defective and worn out condition of its engine, cars and machinery and other causes unknown to plaintiff, and peculiarly within the knowledge of defendant."

The defendant after a general denial, answered that the alleged injuries to the cattle were caused by the negligence of plaintiff and those representing him in carelessly handling said cattle and bad treatment of same by plaintiff; that, if the cattle were injured, such injuries resulted from their inherent vice and from their hooking and injuring one another; that the injuries to the cattle and the death of some were caused by plaintiff negligently treating them to an application of Beaumont oil at Gainesville and by cold weather and starvation.

The trial of the case, which was before a jury, resulted in a judgment in favor of plaintiff for $1,449.75.

*Conclusions of Fact.* In the latter part of October, 1902, the plaintiff shipped one hundred and eighty-one head of high grade Durham cattle from Taylor to Washburn, Texas. En route to their destination they were to be transported over defendant's road from Taylor to Wichita Falls, Texas, and from there on, by the Ft. Worth and Denver City Railway Company. They were delivered by plaintiff to defendant at Taylor in good condition, and defendant railway company entered into a written contract with him to carry them from there over its line of road to Wichita Falls. The contract limited its liability to damages occurring on its own line of railway.

When the cattle reached Gainesville, Texas, they were dipped in Beaumont oil for the purpose of cleaning them from ticks, a method recommended and approved by United States authorities. The evidence shows that in dipping, or in making the application of oil, they were carefully handled and in no way injured. The cattle remained at Gainesville ten or twelve days and were in good flesh and first class condition, with the exception of a calf, worth $25, which had been killed before they arrived there. The cattle were reloaded on defendant's train at Gainesville about 9 or 10 o'clock at night and reached Muenster, a distance of about fourteen miles, next morning about 3:30 o'clock.

The evidence shows that the engine which pulled the train there from Gainesville was in a bad condition and leaked so as to render it so weak that it could hardly draw the train. For this reason it was continually backing, so as to get a start, and suddenly pulling ahead, causing a jerking of the cars which frequently threw a great many of the cattle down, bruising and injuring them and crippling some. This was continually occurring between Gainesville and Muenster. When the train reached that place it had to wait there two or three hours

for another engine to carry it to Wichita Falls. When it reached there a great many of the cattle were down. They were carried from there over the Ft. Worth & Denver to Washburn, their destination. While being transported by that road from Wichita Falls there was no unusual jerking of the cars, or rough handling of the cattle, nor any delay nor anything reasonably calculated to injure them. When they arrived at their destination they were in a very bad condition, many of them being badly bruised, some with their hips knocked down and eyes knocked out. And on account of their injuries a very valuable Durham bull died next day, and eight cows and fifteen yearlings died in consequences of the injuries occasioned them by defendant's negligence, within fifteen days afterwards. A large percent of those which did not die were more or less injured.

The evidence is sufficient to show that the damages caused plaintiff by the negligence of defendant in transporting his cattle over its line of road amounted to $1,449.75, and that none of this damage was caused or resulted in any way from any of the acts or things plead by defendant in its answer.

*Conclusions of Law.* 1. Our conclusions of fact dispose of the first, second and third assignments of error, which complain of the insufficiency of the evidence to support the verdict. If the testimony of the plaintiff and his witnesses is true (and this was a matter for the jury and not for us to determine), the evidence is amply sufficient to show that the injuries inflicted upon the cattle were caused by the negligence of the defendant on its line of road, and that the amount of damages found by the jury accruing to plaintiff by reason of such negligence, is not excessive.

2. The plaintiff testified that at Muenster he asked the conductor why he started out with that engine, and that he replied they had to go with whatever they started out with, and admitted that he knew that he could not get far with it. This was objected to by defendant "on the ground that the conversation with the conductor was hearsay." The court overruled the objection, and to its action in doing so and in admitting the testimony, the defendant excepted and has assigned error. We are inclined to think that this assignment is not well taken. The conductor was the agent of defendant in charge of the train when he made the statement, and his knowledge of the condition of the engine when it started out, it seems to us, was the knowledge of his principal, and his admission that he knew the condition of the engine was admissible in evidence as an admission against interest. Telephone Co. v. Prince, 36 Texas Civ. App., 462, 82 S. W. Rep., 327; Standefer v. Aultman, 30 Texas Civ. App., 160, 78 S. W. Rep., 552; Cooper v. Brittain, 74 S. W. Rep., 91; Plotz v. Miller, 51 S. W. Rep., 176. But if it should be conceded that the court should have excluded such testimony upon the ground that it was hearsay, we are unable to see how the defendant was injured by it. The undisputed evidence shows that the engine was defective and unable, from the time it started from Gainesville until it was relieved by another engine at Muenster, to efficiently draw the train, and that by reason of its defective condition the cars in which the cattle were loaded were so jerked about as to

cause their injuries. The defendant was a common carrier and, as such, is regarded by the law as a practical insurer of the safe carriage of the goods against all loss of whatever kind, with certain exceptions, the only one of which, having any application in this case, is such losses as might arise from the inherent nature of livestock. It not being shown that the injury to the cattle arose from their nature, and it appearing that defendant, in furnishing a defective engine, failed to provide all suitable means for their transportation, and that such failure was the cause of the damage, the testimony which is made the subject of this assignment could in no way have prejudiced appellant. Hutchison on Carriers, secs. 170a-218; Texas & P. Ry. Co. v. Snyder, 86 S. W. Rep., 1041.

3. The witness, F. L. Hill, having testified that he was acquainted to a certain extent with the market value of plaintiff's class of cattle at Washburn at the time they arrived there, was then asked by plaintiff's counsel to state what in his opinion was the fair market value of the cattle in question at that place in good condition, and answered, "I think $75 for those cows would have been very reasonable." The question and answer of the witness was objected to by defendant on the ground "that the witness was testifying to his opinion and not as to facts." The admission of the testimony is assigned as error; and the proposition asserted, is that "it was error for the court to permit the witness to testify what the market value of said cattle would be if in good condition, for the reason that defendant is not responsible for the depreciation in weight and appearance of cattle naturally resulting from being transported." It will be observed that the objection here urged to the admission of the testimony is different from that made in the trial court. The rule is, when, on appeal, an assignment of error is predicated upon the admission of testimony, only such objections as were presented in the trial court and stated in the bill of exceptions will be considered. City of Austin v. Forbis, 86 S. W. Rep., 31; Texas & Pacific Ry. Co. v. Birdwell, 86 S. W. Rep., 1068. As therefore the proposition can not be considered, and as it is the only one advanced under the assignments of error, it will be overruled. This also disposes of appellant's fifth, sixth and seventh assignments of error, which, like this one, interpose, for the first time on appeal, objections to the admission of testimony different from what the bills of exception show were made in the court below.

There is no error requiring the reversal of the judgment and it is affirmed.

*Affirmed.*

Writ of error refused.