HOUSTON, E. & W. T. RY. CO. v. BRACKIN et al. (No. 136.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 4, 1916. On Motion for Rehearing, Jan. 31, 1917.)

1. CARRIERS ⬥122—CARRIAGE OF GOODS—DUTY TO MINIMIZE LOSS.

The consignee of goods damaged in transit must receive them if they are not wholly worthless, and handle them as best he can to minimize the damage.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 537, 538, 557–559; Dec. Dig. ⬥122.]

2. CARRIERS ⬥133—CARRIAGE OF GOODS—ACTIONS—EVIDENCE.

In suit by consignee against a carrier for damages to goods alleged to have been caused by the carrier's negligence, it is proper to allow the consignee to show what efforts he made to minimize the damage.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 583–587, 606; Dec. Dig. ⬥133.]

3. CARRIERS ⬥133—CARRIAGE OF GOODS—ACTIONS—EVIDENCE.

In action by consignee for damages to goods in transit, it was not error to admit testimony that he tried to sell the goods, but certain firms refused to make an offer on them, where the consignee specifically stated that such evidence was to show consignee's efforts to minimize damages and not to establish value of the shipment or its lack of value.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 583–587, 606; Dec. Dig. ⬥133.]

4. EVIDENCE ⬥536—OPINION EVIDENCE—EXPERTS — QUALIFICATION — DAMAGES TO SWEET POTATOES.

In action by consignee for damages to sweet potatoes shipped, such consignee, having been a farmer raising and handling sweet potatoes for 20 years or more, was qualified to testify as to the value for eating purposes of sweet potatoes after going through a heat.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2343, 2344, 2347; Dec. Dig. ⬥536.]

5. APPEAL AND ERROR ⬥1052(8)—HARMLESS ERROR.

In such action, even if testimony that the potatoes had no value for eating purposes was objectionable, it was not prejudicial, in view of testimony of other witnesses that the potatoes had no market value for any purpose.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4177; Dec. Dig. ⬥1052(8).]

6. EVIDENCE ⬥543(4)—OPINION EVIDENCE—EXPERTS—QUALIFICATION—MARKET VALUE.

In such action, testimony of consignee that the potatoes did not have any market value when received was not open to objection that he did not know anything about the market value of damaged potatoes at such place, where it appeared that he was a farmer and had been in the business of raising and shipping potatoes for 20 years or more.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2358; Dec. Dig. ⬥543(4).]

7. CARRIERS ⬥135—CARRIERS OF GOODS—MEASURE OF DAMAGES.

The measure of damages for negligent injury to goods shipped is the difference between the market value of the injured goods at the destination and what they would have brought in the market at the destination in the condition they would have been in had the carrier not been negligent; the freight, if not prepaid, being deductible from such amount.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 600, 602; Dec. Dig. ⬥135.]

8. TRIAL ⬥357—SPECIAL FINDING—RESPONSIVENESS TO EVIDENCE ADMITTED FOR SPECIAL PURPOSE.

In action for damages to goods shipped, evidence that the carrier sold the goods after being advertised for $145 did not conflict with an answer of the jury to special issue that the goods, when tendered to the consignee, had no market value, where evidence of such sale was offered for the limited purpose of showing that the carrier had complied with its statutory duty to advertise and sell goods refused by the consignee.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 855; Dec. Dig. ⬥357.]

On Motion for Rehearing.

9. EVIDENCE ⬥317(10)—HEARSAY—CONVERSATIONS WITH THIRD PERSONS.

In an action against carrier for loss of a contract for the sale of goods due to their being delivered in a damaged condition, it was improper to permit plaintiff to reproduce state-

ments made to him by the prospective purchaser regarding the damaged condition of the goods, or conversations other than those essential to show the consummation of the contract of sale and the purchaser's rejection of the goods after delivery at destination.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1183; Dec. Dig. ⊚⇒317(10).]

10. APPEAL AND ERROR ⊚⇒1052(8)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In such action, error in admitting testimony of statements of prospective buyer regarding the damaged condition of the goods was not reversible, where the testimony in the case overwhelmingly showed negligence of the carrier, causing great damage to the shipment, and that the consignee did everything a reasonably prudent person would have done to dispose of the consignment and save what damage he could.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4177; Dec. Dig. ⊚⇒1052(8).]

11. COSTS ⊚⇒234—ON APPEAL—REFORMATION OF JUDGMENT.

Where the judgment was reformed and affirmed and appellees recovered a less amount than in the lower court, costs were adjudged against appellees.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 892–899; Dec. Dig. ⊚⇒234.]

Appeal from Hardin County Court; W. W. Dies, Judge.

Action by J. D. Brackin and others against the Houston, East & West Texas Railway Company and another. From judgment for plaintiffs, the named defendant appeals. Affirmed.

See, also, 180 S. W. 285.

Hightower, Orgain & Butler, of Beaumont, and Baker, Botts, Parker & Garwood, of Houston, for appellant. V. A. Collins, of Beaumont, and W. S. Parker and A. L. Bevil, both of Kountze, for appellees.

CONLEY, C. J. This suit was filed in the county court of Hardin county, Tex., by plaintiffs (appellees) against the Gulf, Colorado & Santa Fé and Houston, East & West Texas Railway Companies, seeking to recover the sum of $305.06, alleged damages to a shipment of sweet potatoes shipped from Honey Island, Tex., on the 14th of October, A. D. 1913, to Houston, Tex., but on account of the alleged delay in the movement of said car and the failure of the defendants to keep the vents of said car open, said potatoes were caused to be heated, and decayed and spoiled, and became worthless to appellees, to their damage in the sum of $305.06. Defendants answered by general demurrer and general denial, and specially answering that, when the defendant, Houston, East & West Texas Railway Company, received said car of potatoes it forwarded it in a reasonably expeditious manner, and upon the first available train, and when same reached Houston, the defendant notified the consignee, but that the consignee refused to accept said potatoes, although they were at said time in a good state of preservation, or at least were not totally destroyed, many of said potatoes being sound, and had such potatoes been accepted by consignee, said shipment would have been handled in a profitable way, but after said car was refused by the consignee, the defendant advertised for sale the contents of same, for the time, and in the manner provided by law, and sold same and applied the proceeds thereof to the payment of the freight and the expenses of the sale. At a former trial of the case, there was a judgment in favor of the Gulf, Colorado & Santa Fé Railway Company, and against the appellee, and in favor of the appellees against the appellant, Houston, East & West Texas Railway Company, but on appeal the cause was reversed as to the Houston, East & West Texas Railway Company, and sent back to the lower court for a new trial. 180 S. W. 285. On November 23, 1915, on a trial before a jury, a verdict was again returned against the appellant, Houston, East & West Texas Railway Company, on special issues, and the court thereafter entered a judgment in favor of the appellees and against the appellant for the sum of $305.06. Thereafter, in due time, an appeal was perfected from said judgment to this court.

Appellant's first assignment of error is as follows:

"The court erred in permitting the witness J. D. Brackin to testify, over the defendant's objection, that Ziegler, of Houston, Tex., stated to the witness that the car of potatoes was worthless, the objection of appellant being that said statement made by Ziegler was a conclusion, and the statement of one not shown to be qualified to know, and also because it was hearsay."

The record affecting the introduction of this evidence reflects the following light: While Mr. Brackin, one of the appellees, was testifying, his counsel propounded to him the following question:

"Q. I will ask you, Mr. Brackin, if you attempted to do anything with the potatoes after you found them in that condition, and, if so, what?"

Appellant's counsel urged the objection that such evidence was immaterial and irrelevant. Appellees' counsel, answering the objection, stated to the court that the evidence was introduced for the purpose of showing that the appellees had complied with the duty, incumbent upon them by law, to show that they exercised reasonable diligence to minimize the loss resulting from the negligence of the appellant, and that the evidence was introduced to show that they tried to sell the potatoes; that Mr. Ziegler was the man they had contracted with to take the potatoes, but that the condition was such that he declined to take them. It appears to us that the answer of the witness to this question was simply an explanation as to why the party to whom the potatoes were shipped, and who had contracted to buy them, would not take them. Under the explanation of the evidence

offered by appellees' counsel, the question was neither asked, nor was the answer given, to prove that the potatoes had no value, but, as explained by appellees' counsel, it was offered to meet the burden the law put upon the appellees to dispose of the shipment of potatoes, if possible, to minimize the loss. We think the evidence was admissible for the purpose for which it was offered. Even if it should be conceded that this evidence came within the hearsay rule, still there is other and ample evidence in the record from which the jury could have based the finding that the potatoes were worthless, and this, on statements other than this made by Mr. Ziegler. Under such circumstances, the error, if any, would be harmless. Lord v. Inc. Co., 27 Tex. Civ. App. 139, 65 S. W. 699; Railway Co. v. Russell, 40 Tex. Civ. App. 114, 88 S. W. 379; Railway Co. v. Baker, 35 Tex. Civ. App. 542, 81 S. W. 67; Railway Co. v. Baumgarten, 31 Tex. Civ. App. 253, 72 S. W. 78. The first assignment of error, is, therefore, overruled. The second assignment of error is as follows:

"The court erred to the prejudice of the appellant in permitting the witness J. D. Brackin to testify that he went to see the firms of Desel & Boettcher and Hencke & Pillot, and tried to sell them said car of potatoes, telling them what the condition of the potatoes was, and that said firms refused to make any offer upon said car, but stated that they couldn't handle them, said testimony being admitted over the objection of defendant, timely made, said objection being that said evidence was immaterial and irrelevant to any issue in the case, and that said facts do not, in any way, tend to show the market value of said potatoes at the time they were tendered the consignee."

[1-3] Under this assignment it is contended that the fact that the above produce dealers refused to buy the shipment, they not having examined the potatoes, is immaterial and irrelevant, and does not tend to establish that the potatoes had not market value. The law places upon the consignee of goods damaged in transit the burden of receiving them if they are not wholly worthless, and handling them as best he can to minimize the damage; and, in a suit by a consignee against a carrier for damages to goods alleged to have been caused by the negligence of the carrier, it is entirely proper to allow the consignee to show what efforts he made to minimize the damage. In the introduction of this evidence, it was specifically stated to the court that that was the object and purpose of such evidence, and that it was not introduced for the purpose of establishing value of the shipment, or its lack of value. Counsel for appellant did not ask for any special charge of the court limiting the effect of this evidence. We think it was admissible for the purpose for which it was introduced. Appellant's second assignment of error is therefore overruled.

The third assignment of error is as follows:

"The court erred to the prejudice of this defendant in permitting the witness J. D. Brackin to testify, over the objection of the defendant, as to whether or not, after the potatoes go through a heat, they are of any value in the market for eating purposes, said objection being because that is not the test in fixing the market value, and, further, because the witness was not qualified, the answer of witness being, 'Well, it is of no value for eating purposes, because it is only a matter of a few hours, something like 36 hours, until they are in a rotten state, beginning to rot, you know. Of course, you know you can cut a chunk of that rot off, and yet you can taste it in the potatoes if you attempt to eat it.'"

[4, 5] There is no merit in this assignment of error, in so far as it is based on the proposition of the witness not being qualified. The evidence shows that he has been a farmer, raising and handling sweet potatoes for 20 years or more. Of course, the general market value of the potatoes is the real test in proving the measure of damages, but if you take from the potatoes their value as a human food, you have affected certainly the market value. It is not to be inferred from this answer of the witness that the potatoes would not have a market value as food for stock. However, this witness, further on in his testimony, as well as other witnesses, testified that the potatoes had no market value for any purpose. Even if this evidence was objectionable, we do not think it was prejudicial. This assignment of error is therefore overruled.

The fourth assignment of error is as follows:

"The court erred to the prejudice of defendant in permitting the witness J. D. Brackin to testify, over the objection of defendant, as to whether or not said car of potatoes was of any market value at the time the witness opened the car at Houston, Tex., the objection being made that the witness should state what condition the potatoes were in, and, said objection being overruled, the witness permitted to state that said potatoes did not have any market value at said time, and, further, because it appears from the witness' testimony that he did not know anything about the market value of damaged potatoes in Houston."

[6] The witness in this case described in detail the condition of the potatoes when he opened the car. He also gave the basis for his knowledge as to the market value of the potatoes. The evidence is uncontradicted that he is a farmer, and has been in the business of raising and shipping potatoes for 20 years or more. There is no merit in this assignment, and it is overruled.

The fifth assignment of error is as follows:

"The court erred to the prejudice of the defendant in failing and refusing to give to the jury, after having refused special charge No. 1, defendant's special charge No. 2, to the effect that the plaintiffs were entitled to recover of the defendant the sum of $94, and no more, and to return a verdict in favor of plaintiffs for that amount."

[7] The court correctly refused appellant's charge No. 2, as the measure of damages in

a suit of this nature is the difference between the market value of the goods injured by the negligence of the carrier, at the destination, and what they would have brought in the market at the place of destination in the condition they would have been in had the company not been guilty of negligence in transporting them; and, if the freight has not been prepaid, it, of course, should be deducted from such amount. Railway Co. v. Fagan, 72 Tex. 132, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776; Railway Co. v. Jarrell, 38 Tex. Civ. App. 425, 86 S. W. 632; Railway Co. v. Ball, 80 Tex. 602, 16 S. W. 441. There is no merit in this assignment, and it is overruled.

Appellant's sixth assignment of error is as follows:

"The court erred to the prejudice of the defendant in submitting to the jury special question No. 3, as shown by its main charge, for the reasons set forth in its written exception and objections filed to said charge."

Under special issue No. 3, the court asked the jury the following question:

"What was the reasonable market value of said potatoes at Houston, the point of destination, at the time said potatoes should have reached Houston by due course of shipment?"

—to which the jury answered "70 cents per bushel." This charge submitted the correct measure of appellees' damages. The only error the court made in the matter was in not deducting the undisputed amount of the transportation charge from Honey Island to Houston, which will be discussed in a subsequent assignment. This assignment is therefore overruled.

[8] Appellant's seventh assignment of error is as follows:

"That the answer of the jury to special issue No. 7 is without adequate evidence to support the same, and is against the great preponderance of the evidence, and the evidence is insufficient to support the same, in that the jury answered said question No. 7, to the effect that at the time said car of potatoes reached Houston, and it was tendered to consignee, said shipment had no market value, when the evidence, without contradiction, shows that five or six days after said shipment was refused by the plaintiff, it was sold at public outcry, after being advertised, as provided by law, for the sum of $145, said sale being made to Ed Blackburn, a potato dealer in Houston, Tex., after said Blackburn and others had examined said car before bidding thereon, and there was no legal evidence to contradict same, and plaintiff's evidence showing that the shipment was only from one-third to two-thirds bad."

Several witnesses for appellees testified that said potatoes had no market value. Therefore the contention that such potatoes had no market value, as being wholly unsupported by the evidence, is not well founded. When the appellant sought to show that it sold the potatoes, after being advertised, for $145, objection was made by counsel for appellees to such evidence as not being the proper way to prove the market value of the potatoes, whereupon counsel for appellant made the following statement to the court:

"I offer it for the purpose of showing what we received for this car of potatoes. The statutes show that when any shipment is refused by the consignee, then it becomes the duty to advertise that for sale for five days, and sell to the highest bidder for cash, and to pay the expenses of sale, plus the freight out of it, and hold the balance for the consignee."

Counsel for appellees thereupon advised the court that they would admit that the appellant company had complied with the statute in the matter of disposing of said potatoes after they had been refused, but still insisted that such evidence did not prove that the potatoes had any market value. The court then admitted the evidence, with the remark, "I do not think it is offered for that purpose;" that is, to prove market value. The evidence was therefore offered and admitted for the limited purpose of showing that the railway company had complied with the statutes in such matters, and not for the purpose of showing that the potatoes had any market value. So far as the record is concerned, the evidence of appellees that the potatoes had no market value at Houston, their destination, at the time they reached there, is uncontradicted. This assignment is therefore overruled. The eighth assignment of error is as follows:

"The judgment as rendered by the court is excessive in the sum of $38.35, in that it is shown by the undisputed evidence that the freight on said car amounted to $38.35, and that said freight had not been paid. That there were, under the evidence, 435 or 436 bushels of potatoes, worth at Houston, as found by the jury, the sum of 70 cents per bushel."

This assignment is well taken. In a suit to recover damages to a shipment of potatoes, where the evidence shows that the freight had not been paid, the carrier is entitled to have the amount of the freight deducted from the market value of the shipment at destination, and a judgment, allowing a recovery for the whole value of the shipment at its destination, without deducting the freight, is excessive to the extent of the amount of the freight. It would appear in this case that the total amount of freight was $38.35, and that the court, therefore, should have deducted this amount from $305.06. The judgment will therefore be reformed in this respect.

Finding no prejudicial error in the trial of this cause, said judgment is therefore reformed, as hereinbefore stated, and affirmed.

### On Motion for Rehearing.

DAVIS, J. [9] On consideration of appellant's motion for rehearing, we are of opinion that the court was in error, in holding that the trial court did not err in permitting the witness J. D. Brackin to testify over objection, that Ziegler stated to the witness, "The car of potatoes was worthless." The rule is, as laid down in the case of G., C. & S. F. v. Coulter, 139 S. W. 16:

"In an action against the carrier for loss of a contract for the sale of goods due to their being

delivered in a damaged condition, it was improper to permit plaintiff to reproduce statements made to him by the prospective purchaser regarding the damaged condition of the goods, or conversations other than those essential to show the consummation of the contract of sale and the purchaser's rejection of the goods after delivery at destination."

[10] But, in view of the fact that the testimony in this case overwhelmingly shows negligence on the part of appellant, and that the shipment was greatly damaged because of the negligence of the appellant, and that the appellee did that which a reasonably prudent person would have done, in order to dispose of the consignment, to save what damage he could, we are of opinion that, while this testimony was not admissible, it was not of that material nature as to require a reversal of the case.

[11] In the opinion rendered in this case no disposition was made of the costs of this appeal, although the judgment of the lower court was reformed and affirmed, and the appellees recovered a less amount than in the lower court; and the cost of this appeal is adjudged against the appellees.

Appellant's motion for rehearing is refused.

HIGHTOWER, Jr., C. J., being recused, did not sit.