KINCHELOE IRRIGATING CO. v. HAHN BROS. & CO.

(Court of Civil Appeals of Texas. Nov. 2, 1910. Rehearing Denied Nov. 30, 1910.)

1. LANDLORD AND TENANT (§ 48*)—LEASE—BREACH OF CONTRACT—LANDLORD'S LIABILITY—OWNERSHIP OF LAND LEASED.

If defendant rented land to plaintiff agreeing to furnish seed and water, it would be liable for damages for breach of its agreement, whether the land leased belonged to it or not.

[Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 48.*]

2. CORPORATIONS (§ 425*) — REPRESENTATION BY OFFICER—CONTRACTS — LEASES — ESTOPPEL.

Plaintiff contracted for the leasing of land and furnishing of the seed, and water for irrigation, with the general manager of defendant irrigation company, who was at the time generally known as such, and had authority to make such a contract for defendant. The contract was on one of defendant's blank forms, was executed in its office where its books, maps, and contracts were kept, and defendant's map was used to designate the land rented. The manager did not state at the time that the land was owned by, and that he represented, a "Farms" company, and not defendant. The water and seed rice was furnished for the land by defendant, and its agent collected from plaintiff a part of the rice as rent, put it in sacks belonging to defendant, and stored it in its warehouse, and defendant's general manager, after the payment of the rent, agreed that defendant would pay plaintiff damages resulting from its failure to furnish water. The general manager who made the contract with plaintiff was not known as manager of the "Farms" company, another having acted and being recognized as such. Held, that defendant was estopped from denying that the contract was executed for it by its general manager.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 425.*]

3. EVIDENCE (§ 472*)—OPINION EVIDENCE—CONCLUSIONS OF WITNESS.

Where in an action for breach of a lease executed by one who was defendant's general manager, in which defendant claimed that such

---

manager acted for another and not for it in making the lease, it was admitted that he was defendant's manager when the lease was executed, with authority to execute such a lease, and there was nothing to put plaintiff on notice that he was not acting for defendant, plaintiff was properly allowed to testify that such manager represented defendant in making the lease.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 472.*]

**4. CORPORATIONS (§ 432*) — REPRESENTATION BY MANAGER — LEASE — ADMISSION OF EVIDENCE.**

In an action for breach of a contract to lease land and furnish seed and water, claimed to have been made by defendant's general manager for defendant, which defendant denied and claimed that such manager was acting for another, plaintiff could testify that the manager agreed to furnish seed, and that the rice paid as rent was delivered to defendant's teamsters, and hauled off in its wagons.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 432.*]

**5. EVIDENCE (§ 512*)—EXPERT TESTIMONY—SUBJECT-MATTER—CROPS.**

Expert knowledge is not necessary to testify whether a crop of rice was sufficiently watered to make it properly grow.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 512.*]

**6. EVIDENCE (§ 545*) — EXPERT TESTIMONY — COMPETENCY OF EXPERT.**

It may be presumed that an employé of defendant irrigation company in charge of the distribution of water for irrigation had sufficient knowledge to know whether rice land was obtaining sufficient water, and defendant should not attack his competency to so testify.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 545.*]

**7. EVIDENCE (§ 536*) — EXPERT TESTIMONY — COMPETENCY OF EXPERT.**

One who had cultivated rice for three years, and stated that he knew a good rice crop from a poor one, was qualified to testify that certain land would have yielded a certain number of bags an acre had it been properly watered.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 536.*]

**8. APPEAL AND ERROR (§ 882*)—ESTOPPEL TO ALLEGE ERROR.**

Appellant cannot complain of testimony brought out by itself on cross-examination.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3599; Dec. Dig. § 882.*]

**9. EVIDENCE (§ 471*) — OPINION EVIDENCE — CONCLUSION OF WITNESS.**

In an action for breach of a lease executed to plaintiff by one who was then defendant's general manager, .but which defendant claimed was not executed for it, defendant's agent testified that he was employed by it to collect rent and collected grain rent from plaintiff's land; the bags in which it was hauled away and stored being marked "K. I. Co.'s Rice," those being defendant's initials. *Held,* that such testimony was properly admitted, being of fact, and not the conclusions of the witness.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 471.*]

**10. EVIDENCE (§ 471*)—OPINION EVIDENCE—CONCLUSIONS OF WITNESS.**

Where rice collected as rent was hauled away on defendant's wagons, placed in its warehouse, and marked by defendant's employés with its initials, a witness knowing such facts could testify that the rice was delivered to defendant.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 471.*]

**11. CORPORATIONS (§ 432*)—REPRESENTATION BY MANAGER—ADMISSION OF EVIDENCE.**

In an action for breach of a lease claimed to have been executed for defendant by its manager, which defendant denied, it was proper on the cross-examination of such manager, who had testified that he made the contract for T. and B. and not for defendant, of which fact plaintiff was not informed when the lease was executed, to show that T. was a stockholder and director in defendant company in order to show that the owners of both concerns were endeavoring to shift liability under the contract from one to the other, and as tending to show that fraud had been perpetrated on plaintiff in executing the contract.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 432.*]

**12. CORPORATIONS (§ 432*) — REPRESENTATION BY MANAGER—LEASES—ADMISSION OF EVIDENCE.**

In an action for breach of a lease executed with plaintiff by one who was then defendant's general manager, but which defendant claimed was not executed for it, evidence was admissible as tending to show that the contract was executed for defendant; that it was executed in its office by its general manager and other officers on one of its blank contracts; that the grain rent was placed in defendant's sacks, and stored in its warehouse; and that, when the lease was demanded, it was not produced by defendant.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 432.*]

Appeal from District Court, Wharton County; Wells Thompson, Judge.

Action by Hahn Bros. & Co. against the Kincheloe Irrigating Company, in which A. W. Hahn and another intervened. From a judgment for interveners, defendant appeals. Affirmed.

G. G. Kelley and Proctor, Vandenberge & Crain, for appellant. W. L. Hall and John E. Linn, for appellees.

FLY, J. This is a suit for damages originally instituted by appellees against appellant, arising from the breach of a contract alleged to have been made between appellees and appellant, whereby the latter rented to appellees for one year 360 acres of land to be used for raising rice, agreeing to furnish the necessary seed rice to properly plant the same and to furnish water in sufficient quantities at the proper times to irrigate the 360 acres of land, and that said contract was breached by appellant failing and refusing to furnish the water as it had contracted, by reason of which breach of the contract appellees were damaged in the sum of $5,902. A. W. Hahn and A. P. Hahn intervened in the suit, alleging that the cause of action had been acquired by them, and that they were the true owners of the same. The jury returned a verdict in favor of the interveners in the sum of $4,216.68, with 6 per cent. interest from date, and on that verdict the judgment was rendered. The evidence was

sufficient to establish that Peter Hahn, as a member of the firm of Hahn Bros. & Co., made a contract with Frank M. Bullock, who was at the time the general manager of appellant, and was generally known in the community as such, and was clothed with full authority to make the contract that he did with appellees. The contract was entered into in the office of appellant, where its books, maps, and contracts were kept by its chief officer, and a map of appellant's was used to designate the land that appellees were renting, and Peter Hahn was not contradicted in this statement: "He told me he would furnish the land and the rice and the water for one-half, and then he handed me one of the blank contracts of Kincheloe Irrigation Company, and told me to look over it; and I told him all right, but that I didn't care so much about looking over it if he would just tell me what he would do. He told me, and I told him I would take the land." Bullock testified that he did not disclose to appellees that he was representing another concern nor that it owned the land, and did not inform them that he was not acting for appellant in making the contract. What water was put on the land was furnished by appellant. The seed rice was furnished by it, and Burford, the agent of appellant, collected the rent from appellees, being a part of the rice, and put it in sacks belonging to appellant and stored it in appellant's warehouse. After the rent had been paid, Bullock, the manager of appellant's business, agreed that the company would pay appellees the damages resulting from the failure to furnish the water for the rice. In the face of this evidence, appellant asked the court to instruct the jury to return a verdict for appellant, because there was no evidence to show any contract with appellant, which was refused, and that refusal is made the subject of the first assignment of error. It will not be sustained.

It would not matter to whom the land belonged. If appellant rented it to appellees and agreed to furnish seed and water, and failed to furnish the water, and appellees were damaged thereby, appellant cannot escape liability. No man would be safe in making a contract with a corporation if the general manager, treasurer, and vice president who made the contract in the office of his company, and while acting within the apparent scope of his powers can afterwards claim that, although all the circumstances would lead any man to think he was contracting with the corporation, he was at that particular time acting in another capacity. Such shifting of character, office, or agency might provoke mirth and elicit applause in a comic opera, but cannot meet with the approbation of a court of justice. Bullock was clothed with authority to make the contract that he did for appellant, and the testimony shows that it profited by it, and though Bullock may have secretly intended to claim

the contract as "Manager of the Farms," instead of as "Manager, Treasurer, Director, and Vice President of the Kincheloe Irrigation Company," appellant will be bound by the contract. Appellees knew nothing about the "Manager of Farms," but was led to believe by the acts and conduct of Bullock that they were contracting with the manager of the Kincheloe Irrigation Company. Acting in his dual capacity, if Bullock, who was generally known as the general manager for appellant, was not acting for the company in whose office he was doing business and whose contracts were exhibited to indicate to appellees what would be agreed to, honesty and good faith would demand that he should have disclosed for whom he was acting. The failure to do so had the effect of perpetrating a fraud upon appellees, if he had the secret intention of not making a contract for appellant. He did not at the time intimate that he was not acting for appellant, and all of his acts and those of appellant's other agents afterwards tended to confirm the contract as one with appellant. That he was acting for the "Farms," and not the "Irrigation Company," was never disclosed until it became important to defeat the claim of appellees. The acts of Bullock were calculated to, and did, induce appellees to believe that they were contracting with appellant, and this conduct continued all the time the contract was being performed and appellant reaped the benefits of the contract. There was no possible way for appellees to know that Bullock had a secret agreement with appellant by which he was to use its office, its blank contracts, its rice, its sacks, and that it had no interest in the contract, and it cannot under such circumstances evade responsibility under the contract. The circumstances proclaimed to the world that Bullock was acting for appellant as loudly as though it had been proclaimed from the housetops, and it will in equity and good conscience be estopped from denying the execution of the contract.

Another circumstance tending to confuse persons dealing with this "Manager of the Farms" was the fact that Benthal was recognized as such manager and was acting as such, and it does not seem to have been known to the public that Bullock was a manager also. Benthal claimed to have the superintendence of all tenants working the lands of Templeton and Bullock, and yet he testified, "I had very little to do with Hahn Bros. & Co.," which is very significant when considered in connection with the claim of appellees that they were tenants of appellant. As hereinbefore stated, it does not matter to whom the land rented to appellees belonged, for it cannot be denied that appellant's general manager, vice president, and treasurer had agreed to furnish water to irrigate the land. That was the business in which appellant was engaged, and Bullock, acting ostensibly as its agent, being known

as such generally and acting fully within the scope of his authority, in its office, agreed to furnish its water to appellees. Appellant failed to furnish the water, appellees were damaged, and appellant is responsible for the damages.

The case of Barstow Irrigation Co. v. Cleghon, 93 S. W. 1023, cited by appellant as being directly in point and conclusive in this case, does not fit the facts herein proved. In that case a landlord acting for himself rented land to his tenants, agreeing to furnish them with water. The landlord expected to get the water from the irrigating company. It was not pretended that the tenant had any dealings or contract with the irrigation company, or that the landlord was acting for it in making his contracts with his tenants. The court very properly held that the landlord was the only party having a right of action against the irrigation company, as there was no privity of contract between it and the tenants. In this case, the contract for water was made with a man who seems to have held every position of trust with the irrigation corporation and made with him as the representative of that corporation.

It was admitted that Bullock was the agent of appellant when the contract was made, and that he had the authority as such agent to make the contract is abundantly shown, and that the contract was one strictly within the scope of the business for which appellant had been incorporated, and Peter Hahn was authorized to testify that Bullock was representing his corporation in making the contract. The evidence was not introduced to establish agency. That was admitted, and all the facts and circumstances tended to show that Bullock was acting as agent of appellant in making the contract. He did not tell Peter Hahn that he was not so acting, and there was not a single circumstance to place Hahn upon notice that he had stripped himself of the robes of "General Manager, Treasurer, Director, and Vice President of the Kincheloe Irrigation Company," and had donned the uniform of "General Manager of the Farms." Under the circumstances the court rightly permitted Peter Hahn to state that Bullock was representing appellant in making the contract.

The case of Southern Home Bldg. & Loan Association v. Winans, 24 Tex. Civ. App. 544, 60 S. W. 825, is cited by appellant as being "directly in point." It may have been in point in that case where the only proof of agency was the statement of a witness that the agreement "was made with Mr. Eubanks, an agent of the company," and it was held by a divided court that the statement was inadmissible. In this case the agency was admitted, and Peter Hahn stated as a fact that he made the contract with that agent, as he had the undoubted right to do, because all the circumstances narrated

132 S.W.—6

by him could not have led to any other reasonable conclusion. Appellant had the right to fully cross-examine the witness on his statement, and it exercised that right and brought out all the facts connected with the execution of the contract. We have examined the authorities cited by appellant, and they do not sustain its contention. In connection with the objection to the witness stating that Bullock had represented appellant in making the contract, it may be noted that the witness in the further progress of his testimony stated, without objection, that appellant was to furnish under the terms of the contract seed rice, land, and water for the irrigation of the crop.

Appellant complains, through the third and fourth assignments of error, that Peter Hahn was permitted to testify that he got the seed rice from appellant, and that he delivered one-half the rice to appellant at the separator in the field. These objections must fall to the ground because the witness did not testify as stated in the assignments. He said Bullock, as agent of appellant, agreed to furnish the seed, but did not say the company furnished them, nor did he state that one-half the rice was delivered to appellant, but that he delivered it to the teamsters of appellant, and that they carried it off in the wagons of appellant. These were facts to which he could testify. We think any one of ordinary intelligence could tell whether a crop received sufficient quantity of water to make it grow properly, and expert knowledge would not be required in order to testify on such a subject. The most ignorant field laborer could tell whether his crop or that of others needed rain or irrigation by artificial means. The witness, however, was the employé of appellant in charge of the distribution of water for irrigation purposes, and the presumption might be indulged that he would know whether land was obtaining sufficient water or not. He was the man upon whom appellant depended to fulfill its contracts for water, and it should not attack his competency or knowledge in regard to furnishing water.

The witness Burford qualified as a rice grower, stating that he had cultivated rice for three years, and knew a good rice crop from a bad one, and the court did not err in permitting him to testify that appellee's land, had it been properly cultivated and watered, would have made 18 bags of rice to the acre. The case of El Campo Rice Milling Co. v. Montgomery, 95 S. W. 1102, does not touch the question presented in this case. Appellant brought out all the testimony objected to on cross-examination, and cannot be heard to complain of it. Sullivan v. Fant, 110 S. W. 507, and authorities therein cited. What has been said as to the sixth assignment disposes also of the eighth assignment.

The witness Burford did not state in

terms that he collected the rice from appellees as rent for appellant, and stated, however, that he was employed by appellant to collect rents, which was a fact not denied, that he got rent off the land of appellees and hauled it to Pierce and put it in the warehouse there, and that it was marked "K. I. Co." and as "K. I. Company's rice." These were all facts and not conclusions of the witness, and were properly admitted. All the evidence tended to show that the rent was delivered by appellees to appellant, and it was not error to allow the witness Sparks to testify that the rice was delivered to appellant, and that its teams hauled it away. Its collector got the rice, put it on its wagons, its employé marked it "K. I. Co.," and it was put in its warehouse and any witness who knew the facts could well say appellant got the rice. The witness Bullock had stated, although he did not make it known to appellees, that he entered into the contract with them for Templeton & Bullock, and it was proper on the cross-examination of the witness to show that Templeton was a stockholder and director in the irrigation company, and that the witness Templeton and McDowell were the principal stockholders of the irrigation company. It tended to show that a fraud had been perpetrated upon appellees, when taken in connection with the other facts, and that men owning both concerns were endeavoring to shift responsibility from one to the other as the occasion might demand.

The fact that the contract was made in the office of appellant, where it kept its books, was very important, when taken with the other facts, to show that the contract was made by appellant. The contract was executed in appellant's office by appellant's general manager, director, treasurer, and vice president, was in writing, presumably on one of appellant's blank contracts, the rent was placed in its sacks, stored in its warehouse, and, when the written contract was demanded, it was not produced by appellant. These circumstances were necessary and proper, and tended to show that appellant entered into the contract with appellees.

The court did not err in refusing the third special charge asked by appellant. It was not only on the weight, but in the face of the testimony.

There is only one proposition under the thirteenth assignment of error, and it is vague and indefinite. However, the charge complained of did not have anything in it that would have any tendency to cause the jury to believe that the court was of the opinion that the contract had been proved.

There is nothing fundamental in the error assigned as such, and the assignment is overruled. It involved nothing but what was presented in other assignments, which have been fully considered in this opinion.

The judgment is affirmed.