**S. S. KRESGE COMPANY et al., Appellants,**

v.

**J. D. PRESCOTT, Appellee.**

No. 7915.

Court of Civil Appeals of Texas.

Texarkana.

Nov. 26, 1968.

Rehearing Denied Dec. 17, 1968.

John W. Copeland, Thompson, Knight, Simmons & Bullion, Dallas, for appellants.

H. Louis Nichols, Saner, Jack, Sallinger & Nichols, Dallas, for appellee.

FANNING, Justice.

Appellee J. D. Prescott sued S. S. Kresge Company, Wally Folks and Jewelry Service Garland, Inc., for false arrest and imprisonment. In response to special issues submitted the jury in the case found in effect as follows: (Special Issue 1) that the arrest and imprisonment of plaintiff J. D. Prescott was brought about at the

direction of the defendant Wally Folks; (Special Issue 2) $65,000.00 was awarded as actual damages to plaintiff by reason of his arrest and imprisonment; (Special Issue No. 3) that defendant Wally Folks acted with malice in requesting the arrest and imprisonment of the plaintiff J. D. Prescott; (Special Issue No. 4) $35,000.00 was awarded as exemplary damages to plaintiff J. D. Prescott; (Special Issue No. 5) that the defendant corporations, or a manager of defendant corporations, ratified the action of Wally Folks in requesting the arrest of J. D. Prescott. The trial court entered judgment for plaintiff against all defendants for the sum of $100,000.00. On hearing of appellants' amended motion for new trial, the trial court concluded that a new trial should be granted unless plaintiff filed a remittitur in the amount of $35,000.00. The plaintiff filed a written remittitur in the amount of $35,000.00, and defendants-appellants amended motion for new trial was overruled. Defendants-appellants have appealed.

Appellants by their points 1 and 3 contend to the effect that there was 'no evidence' and 'insufficient evidence' to support the jury's answer to special issue 1, and that such answer was so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust.

For a comprehensive discussion of the law applicable to the determination of such character of points see Chief Justice Calvert's Article, " 'No Evidence and Insufficient Evidence' Points of Error", 38 Tex. Law Rev., No. 4, p. 361.

Appellants in their brief make a general preliminary statement of facts (which appellee in his brief states is substantially correct as hereinafter shown) as follows: (Omitted however are various references to the Transcript and Statement of Facts.)

"Preliminary Statement of Facts

"The facts are basically undisputed.

"Defendant S. S. Kresge Company owned and operated a discount store located at 1406 Walnut Street in Garland, Dallas County, Texas, known as K-Mart. Defendant Jewelry Service Garland, Inc., operated the jewelry department of that store, and defendant Wally Folks was the manager of that department. Plaintiff was the manager of the Gibson Discount Store located approximately two miles down the road on Walnut Street, also in Garland. This lawsuit arose from a series of confrontations and incidents between the employees and personnel of K-Mart and the employees and personnel of Gibson's, which eventually culminated in plaintiff's arrest.

"K-Mart opened to the public on August 11, 1966, and Gibson's opened on August 22, 1966. A few days after Gibson's opened, Jack Hall, the manager of K-Mart, requested Richard Olson, the assistant manager of K-Mart, to take various employees and personnel over to Gibson's for the purpose of comparing prices on certain items. The practice of comparative or competitive shopping was explained as being customary in the trade, and practiced by all discount houses, including Gibson's. The purpose of such practice, of course, was to compare another store's prices for certain items with your own in order to remain or become competitive.

"On August 25, Olson and Folks entered Gibson's and began comparing prices. After a few minutes, the manager of the drug department approached them, inquired of their activity, and then asked them to leave. Both Olson and Folks testified that they had never been asked to leave a store before under such circumstances, but since they did not know what their rights were, they did leave.

"In order to determine their rights, Olson called the Garland City Police and talked with Chief Ashley and Captain Hammond, who, after investigating the matter and conferencing with Assistant Chief Bob Wade, City Attorney Young, and Dallas District Attorney Henry

Wade, advised Olson that they had a right to comparatively shop in Gibson's and that no one from Gibson's had the right to eject them for that reason. Olson, in turn, so advised Folks. According to Captain Hammond, who testified at time of trial, he made four or five phone calls and two personal visits to explain to plaintiff, under his understanding of the law, that the employees of K-Mart had the right to comparatively shop in Gibson's. Mr. Prescott disagreed with Captain Hammond, and maintained that they did not have a right to write down prices in his store, and that he intended to prevent them from doing so. Captain Hammond advised Prescott that if he or anyone from Gibson's attempted to interfere, they would go to jail, and that the same would apply for the employees of K-Mart if they started anything.

"Believing they had the legal right to comparatively shop in Gibson's, Olson, Folks, and other employees attempted on subsequent occasions to exercise that right. The record is not clear as to the exact number of times that employees of K-Mart entered Gibson's for that purpose, but it is clear that on each occasion they were asked to leave. Apparently, it was not the practice of comparative shopping that was objectionable, but rather the practice of writing the prices down inside the store. According to Mr. Prescott, comparative shoppers could come in and memorize the prices, but could not write down any prices or dictate any prices into a tape recorder, since this was a store policy formulated by Mr. Gibson.

"The K-Mart employees did not always leave when requested, which generally precipitated further action on the part of the employees of Gibson's in accordance with specific instructions from Prescott. On one occasion, some shoving and pushing ensued, and on another, Gibson's employees would stock the shelves immediately in front of the K-Mart employees to prevent their reading the prices. On another occasion, a large sign was displayed to the effect that here were K-Mart employees shopping the low, low prices of Gibson's. On still another occasion, the Garland Police were called by Prescott to arrest the K-Mart employees as trespassers, which charge was countered by one for assault, whereupon the matter was dropped.

"On the morning of August 30, 1968, Olson and Folks entered Gibson's for the purpose of comparing prices. They were confronted by plaintiff and Mr. Rauls, the assistant manager, and were asked to leave. When they refused, some employees began stocking in front of them to prevent their reading the prices, and some pushing and shoving occurred. Olson and Folks then left, called Captain Hammond, and returned with a concealed tape recorder. They were also accompanied by two additional employees. Upon discovery of the tape recorder, the Garland Police were called by Rauls to arrest the K-Mart employees as trespassers. Officer Irwin arrived a few minutes later, investigated the matter, and asked the K-Mart employees to leave, which they immediately did.

"Pursuant to the instructions he had received from Captain Hammond, Olson asked Officer Irwin to call the Captain. Captain Hammond was called, and shortly thereafter, he and Sergeant Pinkston arrived on the scene. Prior to that time, Officer Murphy, who also had responded to the trespass call, arrived on the scene. Captain Hammond went inside and talked with Prescott. He again advised plaintiff that under the law as he understood it, the K-Mart employees had the right to comparatively shop in Gibson's and that no one had the right to evict them or otherwise interfere with their activity as long as they behaved themselves. Prescott replied to the effect that why don't you go about your patrol and I will handle my store, to which Captain Hammond stated that if he attempted to interfere or put the K-Mart people out of the store

he would be placed under arrest. Captain Hammond further stated that if either side started anything, the guilty party would be arrested. Upon returning outside, Captain Hammond told Olson and Folks and the other K-Mart employees that they had the right to return if they wanted to and that he had told the plaintiff to instruct his employees not to interfere with their rights. He also advised the K-Mart employees as he had done Prescott to the effect that he would arrest whichever party started anything.

"Approximately five to ten minutes later, Olson, Folks and two other K-Mart employees re-entered the store accompanied by Captain Hammond, Sergeant Pinkston, and Officers Murphy and Irwin. According to the police officers, their purpose in re-entering the store was to prevent an assault or disturbance from occurring. After a few minutes, plaintiff approached Folks and asked him to leave. Upon refusing, plaintiff grabbed Folks by the arm and started pulling him toward the door. Defendant Folks did not forceably resist, but was not going along willingly, and such force as was necessary to pull him forward was being exerted. At this point, Captain Hammond appeared and ordered plaintiff to stop and to turn Folks loose. Plaintiff, who appeared to be quite angry, asked if he was under arrest. Captain Hammond took Folks by the arm and warned plaintiff that he would be arrested if he did not let Folks go. Plaintiff stated that Folks was leaving and started once again to pull him toward the door. Captain Hammond asked Folks if he wished to prefer charges, to which question Folks replied yes. Captain Hammond ordered plaintiff's arrest, whereupon the other police officers, who had already congregated at the scene, proceeded with the arrest.

"Plaintiff was handcuffed and taken to the patrol car in the parking lot where he remained for approximately fifteen minutes until Officer Stokes arrived to take him to the Precinct. He subsequently was taken to the identification division, where his handcuffs were removed, and he was charged by Officer Irwin with simple assault. He remained at the Precinct for approximately two hours before his release, for which release, arrangements had been made prior to his being taken down to the Precinct. Prescott was never tried for the charge of simple assault, and apparently formal charges were never brought against him.

"Defendants do not contend that the advice received from the Garland City Police, apparently predicated on their interpretation of the Civil Rights Act of 1964, correctly stated the law, nor do they contend that plaintiff did not have the right to use such force as was reasonably necessary to remove Folks from the premises after he had been requested to leave and refused, but it is contended that the arrest of plaintiff was solely at the direction and insistence of the Garland City Police, and was not brought about at the direction of Folks; and it is further contended that Folks was never in any way actuated by malice, but, on the contrary, at all times acted in good faith and in the exercise of what he was told and honestly believed to be his legal rights."

Appellee in his brief states that appellants' Preliminary Statement of Facts is substantially correct, but that he desires to make an additional preliminary statement. Appellee's Preliminary Statement (omitting references to the Transcript and Statement of Facts) is as follows:

## "PRELIMINARY STATEMENT

"The Appellants have made a general statement under Preliminary Statement of Facts which is substantially correct, but Appellee desires to make an additional preliminary statement.

"It is undisputed that the Defendant, Wally Folks, was acting as an agent within the scope of his employment for both of the corporate defendants at the

time he went into the Gibson Discount Store to do comparative shopping.

"In Open Court, the attorneys for the Defendants admitted that the arrest of the Plaintiff, J. D. Prescott, was an illegal arrest.

"In reply to Request for Admissions of Fact, the Defendant, S. S. Kresge Company, admitted that prior to requesting a member of the Police Department of the City of Garland to arrest J. D. Prescott, the said Wally Folks had not filed a complaint or caused a warrant to issue for the said J. D. Prescott.

"In reply to Request for Admissions No. 5 served on Jewelry Service Garland, Inc., said Defendant admitted that Jack Hall had authority to dismiss Wally Folks and that Jack Hall was an immediate superior over said Wally Folks.

"It was further admitted that on August 30, 1966, Wally Folks was authorized to engage in comparative shopping along with the employees of S. S. Kresge and Company in the City of Garland, Texas.

"It was admitted that said Wally Folks was acting as an agent employee of Jewelry Service Garland, Inc., while doing comparative shopping.

"In response to Request for Admissions, Defendant, Jewelry Service Garland, Inc., admitted that on August 30, 1966, Wally Folks, as an employee of Jewelry Service Garland, Inc., requested the Garland Police to arrest J. D. Prescott.

"It was further admitted that on August 30, 1966, Wally Folks requested a member of the Police Department of the City of Garland to arrest J. D. Prescott.

"It was admitted that after the arrest of J. D. Prescott on August 30, 1966, Wally Folks continued to ascertain prices of certain merchandise in said Gibson Discount Store.

"In reply to Request for Admissions No. 20, that Wally Folks, acting as an employee of Jewelry Service Garland, Inc., requested a policeman of the City of Garland to arrest J. D. Prescott on August 30, 1966, the Defendant made the following answer, to-wit:

'Wally Folks was comparative shopping in the Gibson Store on instructions from Jack Hall. Immediately prior to the arrest of J. D. Prescott, Wally Folks was comparative shopping items other than jewelry. Because Jack Hall had the authority to dismiss Wally Folks, he had, in all reasonable probability, the authority to direct Wally Folks to comparative shop items other than jewelry. Whether or not the requested arrest was in the course of Wally Folks' duties toward Jewelry Service Garland, Inc. when he was comparative shopping items other than jewelry, is a matter for judicial and/or jury finding.'

"In reply to Request for Admissions, Defendant admitted that prior to requesting a member of the Police Department of the City of Garland to arrest J. D. Prescott, the said Wally Folks had not signed a complaint or caused a warrant to issue for the arrest of said J. D. Prescott.

"It is without dispute that the Appellee, J. D. Prescott, was arrested in the store of which he was the Manager in broad daylight at a time when there were approximately 75 to 100 people in the store. He was handcuffed in the store and placed in a patrol car and taken to the Police Department of the City of Garland. While in the City Hall of the City of Garland, his necktie, belt and shoe laces were taken away from him and he was placed in a cell by himself where he stayed for at least an hour.

"Although arrested without a warrant, Mr. Prescott was never taken before a Magistrate.

"It is without dispute that the Defendant, Wally Folks, was acting as an agent and employee of the Defendant corporations at the time he went into the Gibson Store to do comparative shopping, that while there in order to assist him in completing his comparative shopping, he requested the arrest of the Plaintiff, J. D. Prescott, and after Mr. Prescott had been arrested and taken away by the police, he proceeded to complete his comparative shopping before he left the Gibson Store.

"Mr. Richard J. Olsen testified that he was Assistant Manager of the K-Mart Store in Garland, Texas in August, 1966, and that on the date that Mr. Prescott was arrested he went to the Gibson Store with Mr. Folks and two other employees.

"Mr. Olsen testified that he knew that as a comparative shopper he was not welcome in the Gibson Store and had been told that on several occasions. He stated that he went back to the Gibson Store to do comparative shopping on several occasions because his employers had insisted that he do comparative shopping in the Gibson Store. These instructions came from Mr. Jack Hall and the District Manager Olsen.

"Captain B. J. Hammond, of the Garland Police Department, testified that he arrested Mr. Prescott for simple assault at the request of Mr. Folks.

"Captain Hammond testified that a permanent record was kept in the records of the Police Department of the City of Garland regarding the arrest of Mr. Prescott, and that if another police department made an inquiry, he would advise them that Mr. Prescott had been arrested for simple assault and that the records of the Garland Police Department would so reflect that."

In response to Special Issue No. 1, the jury found to the effect that the arrest and imprisonment of plaintiff Prescott was brought about at the direction of defend-

ant, Wally Folks. Unquestionably Wally Folks was acting within the scope of his employment for both of the corporate Defendants at the time he went to the Gibson Discount Store for the purpose of doing comparative shopping. He went there specifically under the directions of the General Manager of the defendant store, and was accompanied by the Assistant Manager of the store. No issue was submitted to the jury inquiring as to whether plaintiff was arrested by the Garland police officers at their own insistence and direction. The evidence further shows that Captain Hammond did not place plaintiff under arrest until after he asked Wally Folks whether or not he desired to prefer charges against plaintiff. There is testimony in the record from Mr. Folks that he desired to have Captain Hammond arrest Mr. Prescott and that he asked the captain to make the arrest. Captain Hammond also testified to the effect that he arrested Prescott at the request of Folks. Folks also testified to the effect that he intended for Captain Hammond to arrest Mr. Prescott and take Mr. Prescott off of him so that he could go ahead and do his comparative shopping; that he got Mr. Prescott arrested and got him out of his way so that he could go ahead and finish his shopping, and after he got Mr. Prescott arrested he went ahead and finished his comparative shopping. Also in reply to Request for Admissions, the defendant corporations specifically admitted in effect that the defendant Wally Folks had requested the Garland Police to arrest Mr. Prescott.

Rule 169, Tex.R.Civ.P., relating to requests for admissions, is discussed in Thornell v. Equitable Life Assurance Society of United States, Tex.Civ.App., 385 S.W.2d 716, no writ (1964), which discussion is in part as follows:

"A fact admitted in response to a request for admission under Rule 169, T.R. C.P., if and when it becomes a part of the record, is a judicial admission. Also a failure to answer a request, if it is one the requesting party has a right to have

answered, or an evasive answer constitute a judicial admission of the matter inquired about. A judicial admission is one which as long as it remains in the case is a conclusive admission. Masterson, Adversary Depositions and Admissions Under Texas Practice, 10 S.W.L.J. 107 (1956).

\*   \*   \*   \*   \*   \*

"Express admissions made pursuant to Rule 169, T.R.C.P., are as determinative of issues as admissions resulting from a failure to answer the request for admissions. In this connection see the following authorities: Howard v. Western Chevrolet Company, Tex.Civ.App., 372 S.W.2d 378, writ dism. (1963); Fuller Nurseries & Tree Service v. Jones, Tex. Civ.App., 253 S.W.2d 946, no writ (1953); Provident Life and Accident Insurance Co. v. Hazlitt, 147 Tex. 426, 216 S.W.2d 805 (1949).

"An admission made pursuant to Rule 169, T.R.C.P., is of a higher dignity than testimony; such an admission is the same as an admission made in the applicable pleadings of the party. Masten v. Masten, supra [Tex.Civ.App., 165 S.W.2d 225]. An admission in pleadings cannot be contradicted by evidence until the pleading is withdrawn by amendment. 2 McCormick and Ray, Texas Law of Evidence, 24–25. In this connection also see Masterson, Adversary Depositions and Admissions Under Texas Practice, 10 S.W.L.J. 107, 126–127 (1956), \* \*."

Considering the evidence in the record most favorable to the verdict, as we must, with respect to the "no evidence" question raised by appellants' point 1, we hold that there was ample evidence of probative force to support the jury's answer to Special Issue No. 1. Appellants' point 1 is overruled.

We further hold the evidence was sufficient to support the jury's answer to Special Issue No. 1. Also after carefully considering the entire record in the case in the light of the rules of law enunciated in the case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952), we hold that the finding of the jury in response to Special Issue No. 1 was not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Appellants' third point is overruled.

Appellants by their second point contend to the effect that the evidence conclusively established as a matter of law that plaintiff was arrested by officers of the Garland Police Department, at their own insistence and direction, and not at the direction of any of the defendants. We disagree and think there is amply sufficient evidence of probative force to show that Prescott was arrested by the Garland Police at the request of defendant Wally Folks as found by the jury in response to Special Issue No. 1, as outlined in our discussion above of appellants' first and third points. Appellants' second point is overruled.

We also hold that the trial court correctly instructed the jury under Special Issue Number 2 that they could consider impairment of reputation in arriving at their answer, as there was sufficient evidence in the record from which it could reasonably be inferred that plaintiff had sustained at least some damage to some extent to his reputation as a proximate result of his arrest and imprisonment. Appellants' 9th point is overruled.

Appellants' remaining points relate to the jury's findings to special issues Nos. 3 and 5, and also relate to the question of excessiveness of the jury's verdict and the question of whether a new trial should be granted or alternatively whether an additional remittitur should be required by this Court.

We have reached the conclusion that a judgment in some amount for actual damages to appellee against all defendants can be sustained if a proper remittitur is filed

as hereinafter suggested, as we think the verdict is excessive.

█ In order not to unduly lengthen this opinion, we will not go into the numerous authorities cited by the parties in their excellent briefs with respect to questions raised as to the jury's answers to special issues 3 and 5, but will state that it is our best judgment, after carefully examining the record, that there is no evidence of probative force to support the jury's answers to special issues 3 and 5, and that consequently exemplary damages should not be awarded in any amount. If it becomes necessary to reach appellants' "insufficient evidence" and "against the great weight and preponderance of the evidence" points with respect to the jury's answers to special issues 3 and 5, we sustain said points.

Appellants with respect to the question of excessiveness contend to the effect that the verdict of the jury (amounting to $100,000.00, and later reduced by $35,000.00 remittitur) was so shockingly excessive as to be clearly the result of bias, passion, prejudice or other motive, and could not be cured by remittitur, and that a new trial should be ordered, *and in the alternative* appellants contend to the effect that the $100,000.00 judgment of the trial court, as reduced by a remittitur of $35,000.00, was so clearly excessive and without support in the evidence as to require a remittitur reducing said verdict to not over $5,000.00 actual and $1,000.00 exemplary damages.

Rule 440, Texas Rules of Civil Procedure, provides as follows:

"In civil cases appealed to a Court of Civil Appeals, if such court is of the opinion that the verdict and judgment of the trial court is excessive and that said cause should be reversed for that reason only, then said appellate court shall indicate to such party, or his attorney, within what time he may file a remittitur of such excess. If such remittitur is so filed, then the court shall reform and affirm such judgment in accordance

therewith; if not filed as indicated then the judgment shall be reversed."

The Supreme Court of Texas in the case of Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017, 1022, in construing Rule 440, T.R.C.P., supra, stated in part as follows:

"The rule contains no language suggesting that when the Court of Civil Appeals is of the opinion that the verdict of the trial court is excessive and that the cause should be reversed for that reason only, it cannot require remittitur unless it finds in the record evidence other than that afforded by the amount of the verdict that the jury in fixing the amount was influenced by passion or prejudice. We believe that under this rule a Court of Civil Appeals may require a remittitur when, after consideration of the amount of the verdict and the evidence bearing upon the amount, it finds that the verdict is excessive and that the cause should be reversed for that reason only. The amount of the verdict itself, when considered in the light of the evidence in the record, may be enough to convince the Court of Civil Appeals that it was the result of passion or prejudice or other improper motive or was in disregard of the evidence. In our opinion there need not be extraneous proof of passion or prejudice on the part of the jury. Indeed, it would be in many cases very difficult and often impossible to make that proof. The foregoing conclusions find support in Judge Martin's opinion, adopted by the Supreme Court, in World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962."

The trial court was unquestionably correct in holding that the verdict was excessive and in requiring a remittitur of $35,000.00. Appellee's cross-point 1 complaining of this action of the trial court is overruled.

We think the verdict was clearly quite excessive, but whether it is so excessive, as, it alone, requires a reversal of the cause

under the applicable rule stated in World Oil Co. v. Hicks, 129 Tex. 297, 103 S.W.2d 962, has been difficult to determine. We have had some inclination to reverse and remand the cause for another trial but have concluded that the excessiveness may be cured by an additional remittitur, and as the trial court erred only in requiring an insufficient remittitur, we are authorized to require an additional remittitur. See Texas & New Orleans Railroad Co. v. Broadway, Tex.Civ.App., 345 S.W.2d 814, no writ (1961) and authorities therein cited.

Having considered the myriad factors involved in this case and in the exercise of the duties enjoined upon this Court under Rule 440, Tex.R.Civ.P., supra, it is our conclusion that the answer of the jury to special issue No. 2 awarding $65,000.00 as actual damages was manifestly too large and excessive. It is found by us that the answer to issue 2 on actual damages of $65,000.00 was excessive by the sum of $30,000.00. It is found by us that the evidence will support a verdict and judgment in the sum of $35,000.00 for actual damages. As hereinbefore held, we find that the evidence will not support a judgment in any amount for exemplary damages.

Having found the judgment to be excessive by the sum of $30,000.00, it becomes the duty of this Court, therefore, to order that the case be reversed and remanded for a new trial unless within fourteen days after the date of this opinion the appellee files a remittitur of $30,000.00.

Reversed and remanded, unless a remittitur is filed as directed.

November 19, 1968

Filed November 19, 1968

Opinion after filing of remittitur

On November 21st, 1968, appellee filed an additional remittitur of $30,000.00 in compliance with the suggestion of remittitur in the original opinion of this court of November 19th, 1968. The original judgment of the trial court was for $100,000.00

damages; the trial court suggested a remittitur of $35,000.00 which was filed, and which reduced the trial court's judgment to $65,000.00 in favor of appellee. The additional remittitur of $30,000.00 suggested by this court and filed by appellee further reduces the amount of the judgment in favor of appellee to the sum of $35,000.00. The judgment of the trial court, as reduced by the remittitur filed in the trial court, will be further reduced by the additional remittitur filed in this court, and said judgment as so reformed and modified by such remittiturs is affirmed.

Affirmed as reformed and modified.