**D. T. McDONALD et al., Appellants,**

**v.**

**Stanley WEBB, III, et al., Appellees.**

**No. 870.**

Court of Civil Appeals of Texas, Corpus Christi.

May 16, 1974.

Supplemental Opinion, June 6, 1974.

J. Michael Mahaffey, Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellants.

James M. Whitten, Sinton, for appellees.

## OPINION

BISSETT, Justice.

This is a breach of contract case. Stanley Webb, III, et al, sued D. T. McDonald et al, for breach of three contracts for the sale and purchase of cotton produced during the 1972 crop year on plaintiffs' land in San Patricio County, Texas. Following a jury trial, judgment was rendered for plaintiffs in the amount of $13,209.10. Defendants have appealed.

The jury, in response to the two special issues that were submitted, found 1) that the plaintiffs properly harvested the cotton, and 2) that the loss sustained by plaintiffs was $13,209.10. There were no objections to the court's charge, and no one requested any other special issues.

Defendants' points of error may be grouped into four categories. First, they complain that the verdict is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong, in that the evidence showed 1) that plaintiffs breached the contracts themselves and cannot recover; 2) that plaintiffs did not properly harvest the cotton in question; and 3) that plaintiffs sought to deliver cotton grown on acreage other than that subject to the contracts (points 1, 2 and 3). Second, complaint is made (points 4 and 5) that the trial court erred 1) in per-

mitting the witness Don Horn to testify as an expert when no proper predicate was laid and he expressly testified that he was not an expert; and 2) in refusing to allow the defendant D. T. McDonald to testify about the spot market cotton on the basis of accepted reports used in the industry. Third, it is contended that the trial court erred in rendering judgment for plaintiffs because the verdict was insufficient to support the judgment since plaintiffs failed to obtain findings on compress charges and light and heavy weight penalties (point 6). Fourth, defendants assert that the trial court erred in rendering judgment for plaintiffs which did not deduct $1.00 per bale required by the contract (point 7).

In deciding this case, we have reviewed all of the evidence. In determining whether the overwhelming weight and preponderance of the evidence is in favor of or against the verdict, we are guided by the rules laid down in Garza v. Alviar, 395 S. W.2d 821 (Tex.Sup.1965), in Gulf, Colorado & Santa Fe Railway Company v. Deen, 158 Tex. 466, 312 S.W.2d 933 (1958), and in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

The contracts sued upon in this case were executed by plaintiffs, as sellers, and by defendants, as purchasers, on January 20, 1972. They provided that plaintiffs would plant a total of "400 plus acres" in cotton on the farms covered by the three contracts, and would sell and deliver to defendants the "entire cotton production" from the acreage covered by the contracts. The terms and conditions in the contracts that have a bearing on this appeal read, as follows:

"1. GRADES: All grades that are eligible for the 1972 cotton crop loan.

2. PRICE: 33.00 cents per pound, net weight.

3. ALL BG 27¢

4. All charges at the compress along with light and heavy weights penalties will be deducted. The $1.00 per bale for the Cotton Producers Institute will be deducted in the usual manner.

5. . . . It is the sellers responsibility to see the cotton is properly harvested and ginned . . ."

Plaintiff produced 225,611 pounds of lint cotton (475 ginned bales) from the contract acreage, and tendered to defendants their entire production. Defendants refused to accept any of the cotton for the reason that it was of inferior grade.

Plaintiffs then endeavored to sell the cotton on the open market for 33¢ per pound, but were unable to do so. They put it in the "government loan", where it remained for several months. Plaintiffs incurred the following expenses in connection with the loan:

| | | |
|---|---|---|
| 1. | Compress and storage charges | $1,425.00 |
| 2. | Government fees | 73.95 |
| 3. | Interest | 429.60 |
| | TOTAL | $1,928.55 |

Later on, the cotton was withdrawn from the loan and was sold to third parties for 28¢ per pound.

The plaintiff Stanley Webb, III testified that he planted a total of 400 acres in cotton on the three farms affected by the contracts. The certificate which he filed with the local office of the Agricultural Stabilization and Conservation Service of the United States Department of Agriculture certified that 488 acres were planted in cotton. Defendants contend that the planting of 88 acres in excess of the 400 acres contracted for amounted to a breach of contract that relieved them from performing thereunder in that plaintiffs tendered to them substantially more bales than defendants contracted to purchase. That contention cannot be sustained. The contract called for "400 plus acres", and did not put a limit of 400 acres on the cotton acreage.

The intitals "BG", as found in paragraph 3 of the contract, are an abbreviation of "below-grade". Cotton of that grade was not eligible for the "government loan" in 1972. Mr. Glen Drachenberg, the Executive Director of the Agricultural Stabilization and Conservation Service of the United States Department of Agriculture's office at Sinton, Texas, testified that all 475 bales of cotton produced by plaintiffs in 1972 were eligible for the 1972 cotton crop loan, were accepted by the government, and were placed in the government loan. He further testified that there were no bales "below-grade".

The only witness called by defendants was the defendant D. T. McDonald. He testified that he looked at "150 or 200" bales of cotton at the gin and there was "bark and grass in the cotton". He considered the cotton to be "below-grade". A document that was prepared by the plaintiff Stanley Webb, III, which showed 184 bales of cotton had bark in them, was introduced in evidence. Six samples of plaintiff's cotton and three samples of cotton produced by a third party were introduced in evidence in order that the jury might note the difference in the grade reflected by the samples from plaintiff's cotton and that of the third party's cotton.

Plaintiff Stanley Webb, III, testified at length with respect to the manner in which he harvested the cotton. He told the jury that he used commonly accepted harvesting methods in his community to harvest the cotton, and that none of the ginned cotton was "below-grade". There was a considerable amount of rain during harvest time. The cotton was harvested by a mechanical cotton "stripper". Seventy-five to eighty per cent of the cotton that was harvested in the area of plaintiffs' farms for the year 1972 was harvested by cotton strippers. Plaintiff commenced harvesting the cotton about August 15, 1972 and completed the harvest about August 29, 1972. Mr. Don B. Horn, a farmer who farmed a tract of land adjoining one of plaintiffs' farms, was called by plaintiffs as a witness.

He testified that he had a B.S. Degree in Agriculture from Texas A & M University, and that he had been raising cotton for fifteen years. He stated that he was familiar with plaintiffs' farming operations, including the harvesting of the cotton for the year 1972; that the cotton was harvested in a proper manner; that he observed the cotton in the trailers (after it had been picked by the strippers) and it appeared "fine" and did not have an extraordinary amount of bark and leaf in it; that he knew the difference between a "below-grade of cotton and a grade bale of cotton"; that discoloration or an excessive amount of foreign matter would make the cotton "below-grade"; that he was familiar with the usual and customary methods and procedures for harvesting cotton in the area in 1972; that he observed plaintiffs while they were harvesting the cotton; and that plaintiffs used the usual and customary methods in harvesting the cotton.

■ Defendants' contention that it was error to permit the witness Horn to testify as an expert has no merit. Farmers may become expert witnesses in matters peculiarly within their knowledge; that rule is well settled. Kincheloe Irrigating Co. v. Hahn Bros. & Co., 132 S.W. 78 (Tex.Civ.App.1910), affirmed 105 Tex. 231, 146 S.W. 1187; Tandy v. Fowler, 150 S.W. 481 (Tex.Civ.App.—Amarillo 1912, writ ref'd); Houston, E. & W. T. Ry. Co. v. Brackin, 191 S.W. 804 (Tex.Civ.App.— Beaumont 1917, n.w.h.). Mr. Horn did not testify as an expert cotton grader. He did testify that he knew the quality of cotton by looking at it and what makes a "below-grade" bale of cotton. He was qualified by his technical training and by his experience as a farmer as an expert witness in the matter of whether plaintiffs' cotton was below grade or not, and in the matter of whether plaintiffs followed the usual and customary procedures for the harvesting of cotton for the year in question. Texas Rural Communities v. Avary, 113 S.W.2d 597 (Tex.Civ.App.—Amarillo 1938, writ dism'd); Kolacny v. Pelech, 201 S.

W.2d 257 (Tex.Civ.App.—Galveston 1947, n.w.h.).

■■ The trial court properly excluded the testimony of D. T. McDonald concerning the spot market for cotton on February 15, 1973, which testimony was based on information that he said "was gathered from the statistics department in Houston at the Cotton Exchange". The excluded testimony was based on hearsay information and defendants did not establish any basis for the introduction thereof as an exception to the hearsay rule. There was no showing that the testimony sought to be elicited from the witness was generally recognized as being reliable and regularly used in a trade or generally specialized activity by those persons so engaged, and no attempt was made to show that the information was in general use among the persons (or class of persons) interested in the matters to which the excluded information related. See Lewis v. Southmore Savings Association, 480 S.W.2d 180 (Tex.Sup.1972); McMillen Feeds, Inc. of Texas v. Harlow, 405 S.W.2d 123 (Tex.Civ.App.—Austin 1966, writ ref'd n. r. e.). Furthermore, the testimony of Mr. McDonald as to the spot cotton price on February 15, 1973, was totally irrelevant to any issue upon which the case turned, that is, whether or not plaintiffs performed the obligations imposed on them by the contracts, and the amount of loss sustained by plaintiffs occasioned by defendants' refusal to purchase the cotton production for the 1972 crop year at 33¢ per pound.

■ Defendants also contend that the verdict is insufficient to support the judgment because plaintiff failed "to obtain findings on compress charges and light and heavy weight penalties." We do not agree. The burden of proving deductions for compress charges and penalties for light or heavy bales, if any, was on defendants not on plaintiffs. They did not meet that burden. There is no evidence of any light or heavy bales in the 475 bales that were produced and ginned. The $1,425.00 which plaintiff paid, and for which they sue as reimbursement for part of the expenses sustained by them as a result of defendants' breach of the contracts, was for both storage and compress charges in connection with the loan, not just for compress charges which were to be deducted under the contract. The charges paid by plaintiffs had nothing to do with the contracts involved. There is no evidence of what the compress charges would have been had there been a delivery of the cotton under the contracts.

In Cretien v. Kincaid, 84 S.W.2d 1094 (Tex.Civ.App.—San Antonio 1935), affirmed in 130 Tex. 513, 111 S.W.2d 1098 (1938), the court said:

"The general rule is, that the measure of damages for breach of contract, is that 'which affords the injured party compensation for the pecuniary loss suffered by him, placing him as nearly as possible in the position that he would have occupied if the defaulting party had performed the contract.' 13 Tex.Jur. p. 84, § 15."

There is nothing about the case at bar which removes it from the operation of the general rule, so announced.

■ The difference between the contract price (33¢ per pound for "all grades that are eligible for the 1972 cotton crop loan"), and the price at which the cotton was sold (28¢ per pound) is $11,280.55. The interest, fees and charges in the amount of $1,925.55 constituted necessary expenses incurred by plaintiff in connection with putting the cotton in the loan. The difference in contract price and the actual sales price plus the expenses total $13,209.10, which is the identical amount of the loss found by the jury to have been sustained by plaintiffs. Had defendants not breached the contract, plaintiffs would not have been out the $1,925.55 and would have received from defendants $11,280.55 more than they received from the third party, who purchased the cotton. But, had defendants accepted and paid for the cot-

ton in accordance with the contracts, a deduction of $1.00 per bale would have been made, which would have been charged to plaintiffs. $475.00 should have been deducted from the total of $13,209.10 in order to place plaintiffs as nearly as possible in the position they would have been in if defendants had performed their obligations under the contracts. The judgment which was rendered is excessive by $475.00.

It is established by the overwhelming weight and preponderance of the evidence that plaintiffs performed all the obligations required of them by the contracts, that all bales of cotton produced by plaintiffs under the contracts in 1972, were "grade" cotton and that none of them were "below-grade". It is undisputed that all of the cotton was accepted by the proper officials of the Department of Agriculture as being "eligible for the 1972 cotton crop loan". The findings complained of by defendants in their points 1, 2 and 3 are not against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

Having found that the judgment is excessive in the amount so stated, it is accordingly ordered that a remittitur of $475.00 be filed by plaintiffs in this Court within ten days following the announcement of this decision, whereupon this Court will reform the judgment of the trial court by the amount of such remittitur and affirm the judgment; otherwise the judgment will be reversed in its entirety and the cause remanded for a new trial. Rule 440, Texas Rules of Civil Procedure. Carter v. Texarkana Bus Company, 156 Tex. 285, 295 S.W.2d 653 (1956); Southern Pacific Company v. Stanley, 473 S.W.2d 52 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); S. S. Kresge Company v. Prescott, 435 S.W.2d 203 (Tex.Civ.App.—Texarkana 1968, writ ref'd n. r. e.).

We have carefully considered all of defendants' points of error, and with the exception of point 7 on excessiveness of the judgment which is sustained, all are overruled.

The judgment of the trial court is affirmed on condition of remittitur.

## SUPPLEMENTAL OPINION ON THE FILING OF REMITTITUR

This Court has suggested that appellees remit the amount of $475.00 as set forth in this opinion. The appellees, through their attorney, have filed a remittitur in the amount suggested and authorized in the opinion of this Court.

Therefore, in accordance with the opinion and judgment of this Court heretofore announced, the judgment of the trial court is reformed to the extent of the amount hereby remitted by appellees so that the amount of judgment against the appellants is reduced to the sum of $12,734.10, together with interest on said sum of money at the rate of 6% per annum from the date of rendition and entry of the judgment of the trial court.

The judgment as herein reformed is hereby affirmed.